**STATLER HOTELS, Appellant,**

v.

**HERBERT ROSENTHAL JEWELRY CORPORATION, Appellee.**

No. 15870.

Court of Civil Appeals of Texas.

Dallas.

Oct. 6, 1961.

Rehearing Denied Nov. 3, 1961.

Jackson, Walker, Winstead, Cantwell & Miller, W. B. Patterson, and Jack Pew, Jr., Dallas, for appellant.

Johnson, Guthrie & Stanfield and James L. Mitchell, Dallas, and Rein, Mound & Cotton, New York City, for appellee.

YOUNG, Justice.

Herbert Rosenthal, representing appellee corporation of New York City, made one of his regular trips to Texas in November 1956 for purpose of soliciting retail jewelry orders for his wholesale jewelry firm. He arrived in Dallas the afternoon of November 21st, registering at appellant hotel as a paying guest. Then with his sample case containing some 342 pieces of diamond jewelry he called on several local establishments, returning to the hotel about 5 p. m. and obtained from hotel cashier safety deposit vault #357, depositing therein his sample case of jewelry. The box had two locks one opened by a key retained by the hotel guest, the other a master key in possession of the hotel. On November 23rd, he went to the cashier's cage, showed his safety deposit key and asked for entry into Box #357; being admitted to the safety deposit box room by a different cashier. On opening the box by use of both keys it was found to be empty. This suit followed, plaintiff alleging that defendant's negligence resulted in loss or theft of its property; and upon jury issues and answers, judgment was rendered for the jewelry company in amount of $65,000 with 6% interest from date of loss, and consequent appeal by the hotel. There was no recovery against named individuals also sued.

Appellant's first point complains of court error in overruling its motion to dismiss cause "because the undisputed evidence shows that appellee was a foreign corporation transacting business in Texas without a certificate of authority" as required by Art. 8.18, Texas Business Corporation Act, V.A.T.S.; which provides in part: "No foreign corporation which is transacting, or has transacted, business in this State without a certificate of authority shall be permitted to maintain any action, suit, or proceeding in any court of this State * * * on any cause of action arising out of the transaction of business in this State, until such corporation shall have obtained a certificate of authority."

Appellee is a foreign corporation which manufactures and sells at wholesale; having no certificate of authority to transact business in Texas. Its method of operation in this State is reflected in testimony of Herbert Rosenthal, Secretary-Treasurer, as adduced in the motion, summarized as follows: Plaintiff's sales in Texas are made by a salesman Zuehl, living in El Paso, who makes all the small towns in Texas and New Mexico, and by Herbert Rosenthal, who sells in the larger cities. The latter with headquarters in New York City makes some five trips per year to Dallas and Houston to sell jewelry; estimating that he had been in Dallas at least fifty times in the ten years prior to November 1956. His routine of work is not only to take orders for jewelry later to be shipped from New York; he also carries merchandise with him in a sample case, and upon a sale of jewelry he immediately delivers the piece to the buyer. He may leave the jewelry with customer on appraisal or subject to the buyers' being able to sell it; and in case the buyer decides that he does not want the jewelry or is unable to sell it, it is picked up by Rosenthal on next trip. All payments for jewelry are made directly to the corporation's office in New York City; the El Paso salesman Zuehl operating in the same manner, maintaining no business office there for plaintiff corporation and representing numerous other jewelry concerns.

The Texas Business Corporation Act (Art. 8.18, passed in 1955) does not undertake to define "transacting business", except to list several activities (none applicable here) which do not amount to the transaction of business. See Art. 8.01. Appellant argues that under above undisputed facts appellee's activities constituted the transaction of business; citing Normandie Oil Corporation v. Oil Trading Co. Inc.; 139 Tex. 402, 163 S.W.2d 179, 180—a 1942 decision construing the former statute, Art. 1529 covering corporations "desiring to transact or solicit business in Texas, or to establish a general or special office in this State." The Business Corporation Act does not mention solicitation; merely prohibiting the transaction of local business without a certificate of authority, Art. 8.01, subd. A, but generally providing that transactions in interstate commerce are beyond the scope of local business activities. Art. 8.01, subd. B. 14 Tex.Jur.2d Par. 618, p. 709. Appellee takes the opposite view, citing 14 Tex.Jur.2d Par. 706, 710 and 711; and obviously the character of business as intrastate or interstate must turn upon the facts of the particular case. While we are inclined to agree with appellee's thesis that its activities in Texas are interstate in nature, such method of operation is not controlling here. At time of the theft, Rosenthal had transported the jewelry in question from New York City intervening a further journey to Washington, Oregon and California. Under the testimony and as appellee states "He did not have or attempt to have any jewelry transactions with Statler Hotels and only as an incident to his lodging there had entrusted the hotel with the safe-keeping of his jewelry until he could transport it out of the State. His deposit of the jewelry did not arise out of the transacting of business within the State, even if his dealings are considered to be intrastate transactions, which they are not." The point is overruled.

In sum, the jury findings were: that the sample case of jewelry owned by plaintiff was deposited in vault #357 Statler Hotel on November 21, 1956; that on such date the reasonable wholesale cash market value of same in Dallas County was $65,000; that the failure of defendant hotel to deliver to Rosenthal on demand the sample case of jewelry was due to negligence of hotel employees which was a proximate cause of the loss; that defendant, its agents and employees failed to maintain adequate safety measures for protection of the sample case and its contents, which was a proximate cause of loss; that defendant, its agents and employees allowed a master key controlling access to locked boxes to be unguarded, which was negligence and a proximate cause of loss; that at the time, defendant's agents and servants allowed an unauthorized person access to said safety vault # 357 without first requiring proper identification, which was negligence and proximate cause of loss of sample case and its contents and that the incident in question was not the result of an unavoidable accident. To the merits, the hotel company defended on ground that it had adequate measures for protection of its safety deposit boxes and that the loss was due to a theft so well planned that exercise of ordinary care could not have avoided it.

Appellant makes no complaint of lack of evidence to support above findings; its further points asserting court error in its refusal to make findings of fact and conclusions of law following the overruling of motion to dismiss under provisions of Art. 8.18 Texas Business Corporation Act; error in permitting Virginia O'Pell, the hotel's supervisor of front office cashiers at time of loss (and still employed at Los Angeles Statler-Hilton), to testify that she had observed an unauthorized person in the area of the safety deposit boxes prior to November 1, 1956; error in excluding from evidence a report of Dallas Police Department showing that the loss of jewelry was due to a well-planned jewelry theft; error in refusing to permit Captain Walter Fannin, of the Dallas Police Department, to testify that during the time surrounding the loss of jewelry, there had been a series of jewel thefts and robberies throughout the United States; error in refusing to admit in evidence or in excluding from the jury's consideration, defendant's exhibits 30 and 31, consisting of sworn proof of loss and the insurance policy it was based upon, for the reason that the two instruments taken together have independent relevance for the purpose of impeaching plaintiff's witness, Herbert Rosenthal, with regard to value of the jewelry; in entering judgment against appellant because no proper issue was submitted to the jury which could form the basis of a proper measure of damages in a suit for negligence; and error in awarding interest to appellee from date of loss of the jewelry.

■ Under point 2, appellant cites no rule requiring the trial court to make findings of fact and conclusions of law in above interlocutory proceeding to dismiss suit. To the contrary, Rules 296 and 297, Texas Rules Civ.Proc., relate to nonjury trials; Williams v. Thetford, Tex. Civ.App., 301 S.W.2d 954. And Rule 385(e) provides that in all appeals from interlocutory orders the court need not file such findings and conclusions. Furthermore, the testimony of Rosenthal, though an interested witness, was clear, direct and free from contradictions or inconsistencies tending to cast suspicion thereon. 41 B Tex.Jur.Sec. 402, p. 494; defendant relying entirely on the same as a basis for its motion to dismiss.

■ Over objection of defendant, plaintiff was permitted to read from the deposition of Virginia O'Pell, an employee of the hotel at time of theft, a question and answer as follows: "If you have stated some of the safety deposit boxes were located on the lobby floor of the Statler-Hilton Hotel during November and December 1956, then will you state whether you ever observed unauthorized persons in

the area of the safety deposit boxes on the lobby floor prior to November 21, 1956, and, if so, give the approximate dates and circumstances? "Answer: Yes, unauthorized people have been in there repeatedly, such as room clerks, front office managers, assistant managers, and from time to time mechanics, and also the credit manager and house physician. At one time Louise Evans brought her children into the vault area and I told her this was not authorized. I can't give specific times and dates."

Appellant insists that above evidence could have been offered for purpose only of showing that on prior occasions the hotel had failed to protect its vault area and thus raise the inference that it failed to use ordinary care to protect against the theft in question; citing the well-settled rule of M. K. & T. Ry. Co. v. Johnson, 92 Tex. 380, 48 S.W. 568, that when the issue involved is whether or not a person has been negligent in doing or failing to do an act, evidence is not admissible to show that he was guilty of a similar act of negligence on a prior occasion. It is stated that the rule has been modified only in the recent Supreme Court case of Dallas Ry. & Term. Co. v. Farnsworth, 148 Tex. 584, 227 S.W. 2d 1017, 1020; the court there holding: "Evidence of similar transactions or conduct on other occasions is not competent to prove the commission of a particular act charged 'unless the acts are connected in some special way, indicating a relevancy beyond mere similarity in certain particulars.'" Even under the Farnsworth case, a relevancy of the testimony in question is indicated. As a part of its defense of adequate safety measures defendant had sought to show by various witnesses that access to the safety deposit boxes was only through a door always kept locked and controlled by its employees. The testimony of Mrs. O'Pell was admissible at least to rebut the defense of adequacy of these safety

measures. After all, it was but cumulative of the testimony of Mrs. Agnes McDowell and other front office employees of the hotel, admitted without objection that she had seen strange men in the vault area "from time to time" and that it was possible for persons to enter the area of the safety deposit boxes without any assistance from the cashiers. Finally, the testimony of Mrs. O'Pell would have no bearing on other acts of negligence found against defendant; for example, issue 5–A the jury there finding that defendant permitted the master key for all deposit boxes to be unguarded which was negligence and a proximate cause of plaintiff's loss.

Points 4 and 5 allege court error in (a) the court's refusal to admit in evidence defendant's exhibit 11, a report by the Dallas Police Department showing that the loss of jewels was due to a well-planned jewelry theft; and (b) excluding the testimony of Captain Walter Fannin that during time immediately surrounding the loss of jewels there had been a series of jewel thefts and robberies throughout the United States. Here invoked are the provisions of Art. 3731a, V.A.C.S. Sec. 1. "Any written statement, certificate, record, return or report made by an officer of this State or of any governmental subdivision thereof, or by his deputy or employee, in the performance of the functions of his office shall be, so far as relevant, admitted in the courts of this State as evidence of the matters stated therein, subject to the provisions in Section 3" (having to do with notice). Such report, having been properly proven up, should have been admitted in evidence insofar as its contents were relevant. See Travis Life Insurance Co. v. Rodriquez, Tex.Civ.App., 326 S.W.2d 256; (Sup.) 328 S.W.2d 434. The police report reconstructs the actual theft by parties unknown as summarized in appellant's brief and shown in Footnote.[1]

1. "This report stated that on November 12, 1956, the same day Rosenthal arrived, a man giving the name of Robert Maisel, and a fictitious address arrived at the

Statler-Hilton, asked for a safety deposit box, and requested Box number 357m which he stated was a 'lucky number'. (The hotel had four safety deposit boxes

But this is not to say that its exclusion as evidence was reversible error. Gist of said report was testified to by Captain Fannin in considerable detail; inclusive of his conclusion that this was a well-planned theft; not closed either by his department or the FBI who were still working on the matter. And concerning point 5, Captain Fannin was interrogated by appellant's counsel as follows: "All right, I will ask you whether or not during this period of time that we are talking about, there during the latter part of 1956, from September of 1956 on toward the end of the year, there was a series of jewel thefts and robberies, of the kind and character of this particular theft throughout the United States?". On sustaining of objection of appellee, the question was not answered and no bill of exceptions was taken as to what the response of the witness would have been. See Gray v. Mills, Tex.Civ.App., 206 S.W. 2d 278, aff. 147 Tex. 33, 210 S.W.2d 985; Wheat v. Citizens Nat'l. Bank at Brownwood, Tex.Civ.App., 310 S.W.2d 735. Both of these points are overruled.

■ In point six, error is claimed in the court's refusal to admit into evidence defendant's exhibits 30 and 31, consisting of a sworn proof of loss and insurance policy on which it was based, for the reason that the two instruments taken together have independent relevancy for purpose of impeaching plaintiff's witness Herbert Rosenthal with respect to value of the jewelry. The executed policy of insurance under which the proof of loss was made and a part of his loss collected, provided in part: "The company shall not be liable beyond the actual cash value of the property at the time of any loss of damage, and the loss or damage shall be ascertained or estimated according to such actual cash value." Rosenthal had testified on direct examination that the reasonable wholesale cash market value in Dallas, Texas on November 21, 1956, was approximately $75,000; also that he had, in January 1957, signed a sworn proof of loss in the amount of approximately $48,100, the court excluding the insurance policy altogether, limiting introduction of proof of loss to interrogation on "value" and "theft". Appellant was allowed to show by the testimony of this witness that he had previously signed a proof of loss for $48,145.25; but complains that this was wholly ineffectual because the jury was not shown that the witness was *entitled* to claim at the time, Rosenthal only identifying that figure as his cost in the jewelry. Says appellant here: "In other words, merely because the subject of insurance was concerned, Appellant was not allowed to show that the claim to which the proof of loss related was for actual cash value. The

large enough; to accommodate jewelers' sample cases: 358, 359, and 360; the key had been lost to box 358 and the hotel used 360). Shortly thereafter, 'an unknown man' brought the key to a locksmith shop and ordered a duplicate to be made. This information was later confirmed by the locksmith, who said the man fitted the description of Jake Gold, Maisel's confederate. Maisel then returned to the hotel, removed his brief case, and released the locker.

"Later that evening Gold giving a fictitious address in Chicago, checked in the hotel, asked for a safe deposit box, and was assigned number 359. At 5:55 the next morning Gold entered his safe deposit box. Two keys are required to open the box—the customer's key, which fits only the individual box to which it is assigned, and the master key which fits all the boxes and is retained by the clerk. Therefore, both he and the room clerk had to go to the vault to open his locker. At the time Gold was in the vault, another man came to the desk demanding service, and the room clerk left Gold in the vault.

"Obviously, then, while Gold's accomplice was distracting the attention of the room clerk, Gold opened Box 357 with the master key, which the clerk had left behind, and with the duplicate key that he had just had made that afternoon.

"The report went on to note that similar jewel thefts had taken place in Memphis, Mobile, Houston, Austin and Pensacola, all within a short period of time before the theft in the present case and that the jobs were all well-planned, the preparations including a 'trial run' before the actual theft took place."

lower figure, when tendered in the abstract manner allowed by the trial court, could have no persuasive effect on the jury."

■ That it is error to inject the subject of insurance coverage into a jury trial is well settled, Page v. Thomas, 123 Tex. 368, 71 S.W.2d 234; a recognized exception being to effect that if a matter has independent relevancy, it is admissible, even though the fact of insurance coverage is revealed. Factually in point is Moore v. Dallas Ry. & Term. Co., Tex.Civ.App., 238 S.W.2d 741, 743, where a plaintiff suing for property damage of $1150, the defense was permitted to show that such plaintiff had made a statement of proof of loss to his insurer of only $891.01. In affirming a defendant's judgment the appellate court there stated: "In a suit for damage, it is a well recognized rule that the introduction in evidence before the jury of facts showing that either party is insured is reversible error. In the light of the particular facts of this cause, this rule does not apply."

Here, however, the fact situation was dissimilar; the court being faced with the dilemma of either declaring a mistrial for unnecessary disclosure of insurance coverage and yet not interfering with any legitimate cross-examination of Rosenthal on prior inconsistent statements. The problem was solved by Judge Williams, and we think correctly, in this way outside the presence of the jury: He informed appellant that it could interrogate Rosenthal on anything he had said in the proof of loss about values or any inconsistent statement made in the proof of loss; cautioning both sides not to mention "insurance company" or "anything else having to do with insurance"; the court then stating "now that policy need not go into evidence at all"; defense counsel answering "all right, now, let me be clear. As long as I do not mention insurance or insurance company I am permitted to go into anything that is on this sheet", (referring to exhibit 30, the proof of loss).

The testimony of Rosenthal as a whole beginning with his exhibit 3 makes it clear that his figure of $48,145.25 consistently had reference to adjusted values (manufacturers cost, eliminating ordinary overhead and mark-up) which was the basis of his claim under the policy of insurance—something quite different from actual values in Dallas to which would be added under the testimony a normal profit of 35% on the sale of such jewels.

■ Although not objected to at the trial, appellant now complains of no proper issue on measure of damages, suggesting fundamental error. No error deemed fundamental can be raised for the first time on appeal if an examination of the statement of facts is necessary to determine the question. 3. Tex.Jur.2d p. 463; and furthermore, the assignment does not involve fundamental error under the present rules as construed in recent Supreme Court decisions. See Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979.

■ Lastly, error is assigned in the court's award of interest from date of loss of the jewels. We overrule the point and pretermit a discussion of cases cited by appellant. Clearly we think the ruling was correct under the rule announced in Watkins v. Junker, 90 Tex. 584, 40 S.W. 11; consistently followed in subsequent cases and concisely summed up in Ricks v. Culp, Tex.Civ.App., 206 S.W.2d 285, 287: " 'It is now the settled law of this state that, where the damages, whether ex contractu or ex delicto, are complete at a definite time, and the amount is determined by fixed rules of evidence and known standards of value, interest is recoverable as a matter of law from date of accrual of the cause of action. (Houston v. T. C.) Railway (Co) v. Jackson, 62 Tex. 209; Watkins v. Junker, 90 Tex. 584, 40 S.W. 11; Atkinson v. Jackson [Bros.], Tex.Civ.App., 259 S.W. 280; 28 L.R.A.,N.S., 1, note.' * * '* Nor is a jury finding thereon necessary, where the case is submitted upon special issues. Ewing v. [Wm. L.] Foley [Inc.], 115 Tex.

222, 280 S.W. 499, 44 A.L.R. 627; Miller v. Miller, Tex.Civ.App., 292 S.W. 917, error ref."

All points on appeal are overruled, resulting in affirmance of the judgment under review.

WILLIAMS, J., not sitting.