**MISSOURI PACIFIC RAILROAD COM-
PANY, Appellant,**

v.

**SOUTHERN PACIFIC COMPANY,**
Appellee.

No. 133.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

June 19, 1968.

Rehearing Denied Sept. 4, 1968.

Ben Sewell, Tom Terrell, Sewell, Junell & Riggs, Houston, for appellant.

John F. Heard, Baker, Botts, Shepherd & Coates, Houston, for appellee.

TUNKS, Chief Justice.

On September 20, 1959, Jessie Liles, a brakeman employed by Texas & New Orleans Railroad Company was injured while in the process of switching a freight car. The car being switched belonged to Missouri Pacific Railroad Company and had been delivered by its owner to Texas & New Orleans Railroad Company for transportation to its destination at a point on the latter's lines. The car, at the time of its delivery, had a defective hand brake mechanism which defect was a cause of the injury to Liles. Liles did not file suit to recover damages for his injuries but, on March 27, 1962, Texas & New Orleans Railroad Company paid him $25,000.00 in settlement of his claim. Subsequently Texas & New Orleans Railroad Company was merged into Southern Pacific Company which latter company acquired all of the rights growing out of the transaction here in question. Southern Pacific Company filed suit against Missouri Pacific Railroad

Company for full indemnity or, in the alternative, for contribution. A non-jury trial resulted in a judgment for Southern Pacific Company for full indemnity. Missouri Pacific Company has perfected its appeal.

The parties hereto will be referred to as Missouri Pacific and Southern Pacific.

The lines of Missouri Pacific and Southern Pacific intersect at Sinton, Texas. At the point of such intersection sidetracks are maintained to be used in the interchange of cars from the trains of one company to the trains of the other. On September 20, 1959, Missouri Pacific delivered one of its cars to such transfer line to be picked up by Southern Pacific and delivered to Gregory, Texas. When the Southern Pacific train arrived shortly before midnight it coupled onto such car by heading its engine into it. It was necessary to switch the car so as to get it behind the engine. To do this the car was pushed off the sidetrack onto the main line. The engine then, with the car coupled to its front, began moving backwards. When enough speed was reached to cause the car to coast down the main line, the engine was cut loose. The engine then sped on away from the rolling car and into the sidetrack. The switch into the sidetrack was then closed before the car got there so that the car rolled on down the main line. The intention was that, after the car had passed the switch, the engine would pull back onto the main line so that the car would be behind it.

Liles was standing at the car when the engine first coupled onto it. At the time of the coupling, Liles noticed that the wheels on the car skidded on the track, indicating that its brakes were set. He checked the hand brake by feeling of the upright brake rod. The fact that the rod felt taut indicated to him that the handbrake was set. He then released the "dog" that holds the hand brake in the set position. When he did so the wheel used in setting the hand brakes spun to the left—again indicating to him that the hand brake had

been set and had caused the wheels to skid when the coupling occurred.

After following this procedure by which Liles thought the hand brake had been released, he then bled the air from the air brake system thereby releasing the air brakes.

It is the practice, in spotting cars to be picked up later (such as was done here), to set the brakes on the spotted car. The hand brakes and the air brakes are separate, independent systems. From subsequent events it can be concluded that when this car was spotted the Missouri Pacific brakemen probably undertook to, and thought they had, set both the hand brake and the air brake. The hand brake, because of its defect, did not set, but the air brake did so and thus caused the wheels of the car to skid at the time of the coupling, as observed by Liles.

After the car was coupled to the front of the engine and its brakes released, it was Liles' job to ride it during the switching procedure. The procedure outlined above went as intended until the car on which Liles was riding had rolled past the closed switch into the sidetrack where the engine had gone. Liles then tried to apply the hand brake to stop the car so that the engine could pull onto the main line and back into it for a coupling. The brakes, however, failed to hold. There was a slight downgrade in the direction in which the car was rolling and despite the effort of Liles to apply the brakes, the car gained speed. It was rolling in the direction of unguarded crossings in the town of Sinton. The air brake could not be used because the car was not coupled to the train. As he passed another brakeman on the ground near the sidetrack switch, Liles called to him that the brakes would not hold. The brakeman, by signals, caused the engine to come again out onto the main line, closed the sidetrack switch and told the engineer of Liles' predicament. The engine, moving backwards, started chasing the rolling car so as to couple onto it and stop it by ap-

plying the engine brakes. Since the car, on the downgrade, was gaining speed the engine to catch it had to run at a greater speed than that at which a safe coupling should be made. When the engine reached the car the coupling was made with such force that Liles was jarred loose from his hand hold on the car, fell to the ground and received the injury for which he was paid $25,000.00 by Southern Pacific.

The evidence showed that the car in question had been in the Missouri Pacific shop at Palestine, Texas for general repairs from August 27, 1959 to September 11, 1959. Records were kept of the repairs done and there was no record of any repairs having been done to the hand brake system nor do the records show that the hand brake system was defective when the car left the shop. In fact, an employee of Missouri Pacific who had done some of the repairs on the car testified that he had tested the hand brakes before the car left and that they were not defective. There was no evidence showing how the car was used from the time it left the shop until it was, by Missouri Pacific, spotted on the transfer track at Sinton on September 20, 1959, to be picked up by Southern Pacific.

After the accident the members of the Southern Pacific crew discovered the defect in the hand brake system on the Missouri Pacific car. The hand brake was set by turning a large hand wheel at the end of and near the top of the car. Force applied to the hand wheel was, through various connecting devices, transmitted to the brake shoes, causing them to clamp onto the cars' wheels, preventing them from turning. The hand wheel was first connected to the top of a perpendicular rod. (This rod was was found by Liles to be taut when he first tested the brakes to see if they were set). As the hand wheel was turned to the right, clock-wise, it caused the perpendicular rod to pull upward. The bottom of this rod was connected to one end of a device called a "rocker arm." To the other end of the rocker arm was attached one end of a chain. The other end of the chain was

connected to the brake shoe. Thus, the transmission to the brake shoe of the force applied to the hand wheel depended on the free movement of the rocker arm. On the car in question there was a steel beam, called an "end sill," so positioned as to prevent the movement of the rocker arm and thus prevent the effective application of the brakes.

The testimony indicates that during the time the car was in Missouri Pacific's shop, some repairs were done to the end sill on the car. One witness testified that the end sill appeared to have been freshly painted or sprayed and that some of the freshly sprayed paint got onto the adjacent parts of the car, including the wedged rocker arm. From one of the photographs received in evidence by the trial court it could have been concluded that this rocker arm was in its wedged position at the time of the spraying of the end sill.

Upon the above recited evidence the trial court found that Missouri Pacific was guilty of negligence which proximately caused the injuries to Liles in creating the defect in the hand brake, in failing to discover the defect by proper inspection, in failing to correct the defect, and in delivering the car to Southern Pacific in its defective condition. The trial court also found that Southern Pacific, through the agency of Liles, made a proper inspection of the hand brakes on the car in question and was not negligent in the manner in which it conducted the switching operations on the occasion of the accident. The trial court further found that Liles was not negligent in undertaking to switch the car under the circumstances in question and found that the settlement made by Southern Pacific was reasonable and was made in good faith.

By points of error the appellant questions that the evidence supports the trial court's findings of fact. It was because of those points that we have felt obliged to set forth the evidence to the extent that we did. We overrule those points.

We are of the opinion that the evidence which we have detailed was sufficient to support each fact finding made by the trial court. It is true, as contended by appellant, that the evidence shows, as a matter of law, that Southern Pacific was in violation of the Safety Appliance Act. 45 U.S.C.A., Sec. 11. We do not construe the findings of fact made by the trial court, however, as being inconsistent with that evidence.

Alternatively, the appellant Missouri Pacific contends that if the evidence supports the trial court's findings exonerating Southern Pacific of negligence, then Southern Pacific, in making the settlement, was acting as a mere volunteer and, as such, was not entitled to indemnity.

In the first place, the evidence, as we have noted above, conclusively established the liability of Southern Pacific to Liles as a result of the violation of the Safety Appliance Act. Secondly, Southern Pacific was not, under the circumstances, required to prove its liability to Liles as a condition to its recovery of indemnity from Missouri Pacific. After the accident Southern Pacific called on Missouri Pacific to participate in the defense or settlement of the claim. Missouri Pacific, denying any responsibility, declined to do so. By such action it waived any right to a judicial determination of liability of Southern Pacific to Liles as a condition to Southern Pacific's recovery of indemnity from it. Under those circumstances, Southern Pacific was required to prove only that it *might* have been liable to Liles, to the extent that it was reasonable to settle with him. Gulf, Colorado & Santa Fe Ry. Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492; Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775; Chicago, Rock Island & Pacific Ry. v. United States, (7th Cir.), 220 F.2d 939.

The brakeman, Liles, was injured on September 20, 1959. The settlement was made with him on March 27, 1962, more than two years after his cause of action

against both Missouri Pacific and Southern Pacific had accrued. As against Southern Pacific, his employer, he had a cause of action under the Federal Employers' Liability Act. That cause of action was governed by the three-year statute of limitations (45 U.S.C.A., Sec. 56) and was, therefore, not barred at the time of settlement. His cause of action against Missouri Pacific was, however, for common law negligence and was governed by the two-year statute of limitations. Art. 5526, Vernon's Ann.Tex.St. Thus, at the time of the settlement, Liles' cause of action against Missouri Pacific was barred. By point of error, the appellant asserts that it may not be made liable indirectly, by indemnity, when Liles could not have, at the time of the settlement, recovered in a suit filed against it directly. We overrule this point of error.

In a number of situations where joint tort feasors cause injury to a third party, one of them may be protected by law from liability to the injured party. This situation arises when one of the tort feasors is an employer of the injured party and protected by a policy of workmen's compensation insurance. West Texas Utilities Co. v. Renner (Tex.Com.App.), 53 S.W.2d 451. The situation also arises where a city joint tort feasor is protected by governmental immunity. The City of Houston v. Selph, Tex.Civ.App., 356 S.W. 2d 850, no writ hist. In those and other similar situations it has been held that the joint tort feasor is immune from liability to the injured party and is not liable to his joint tort feasor either for indemnity or contribution. Such liability to his joint tort feasor would, by indirection, destroy the protection given him by law. We do not, however, consider the holdings in those cases applicable to this situation. In those cases, the joint tort feasor from whom indemnity or contribution was sought never became liable to the injured party at all. Here Missouri Pacific did become liable to Liles. The running of the statute of limitations did not even extinguish that liability, it merely deprived him of his remedy for

enforcing it. Chapman v. Mooney, 257 S. W. 1106, no writ hist.

We are of the opinion that the facts in City of San Antonio v. Talerico, 98 Tex. 151, 81 S.W. 518, are more nearly analogous. There, an individual was injured because of a defect in a sidewalk and filed suit against the city to recover damages for those injuries. More than two years after the plaintiff was injured, the city, by amended answer, impleaded the property owner who had created the dangerous condition in the sidewalk, seeking indemnity from such property owner. Thus, at the time the property owner was impleaded, the statute of limitations governing the injured party's cause of action against it had run. Nevertheless, the court held that the property owner's plea of limitation as to the city's cause of action for indemnity would not prevent the city's recovery. The court held that the city's cause of action for indemnity accrued and the statute of limitations as to it began to run when the city sustained a damage from the owner's wrongdoing.

The case of Chicago, Rock Island & Pacific Ry. Co. v. United States, supra, involved facts directly parallel to those here involved. The injured party, the railroad employee, was injured on September 24, 1946. His claim against his employer under the F.E.L.A. would have been barred in three years, on September 24, 1949. The employer settled with him on June 17, 1949, at a date when his claim against the United States under the Federal Tort Claims Act was barred by a two-year limitation. The employer railroad company filed suit for indemnity against the United States on April 16, 1951—more than four years after the employee's injury, but less than two years after the settlement with him. The court held that the two-year limitation provided in the Federal Tort Claims Act began to run at the date of the payment to the employee, not at the date of his injury.

In Godfrey v. Tidewater Power Co., 223 N.C. 647, 27 S.E.2d 736, a defendant was held entitled to implead a joint tort feasor to recover contribution even though limitations had run as to the injured party's cause of action against the impleaded party. The court said at p. 737, "It is true common liability to suit must have existed as a condition precedent to contribution, but it is not essential that it should continue to subsist, or be kept alive, against all of the joint tort-feasors."

As we have noted above, the trial court found on sufficient evidence, that Missouri Pacific negligently delivered the freight car in question to Southern Pacific in defective and dangerous condition. In doing so Missouri Pacific breached not only a duty which it owed to the brakeman, Liles, but also a special duty which it owed to Southern Pacific by virtue of the contractual relationship between the two companies. Chicago, Rock Island & Pacific Ry. Co. v. Northwestern Ry. Co., (8th Cir.), 280 F.2d 110. In 44 Am.Jur., Railroads, Sec. 381, it is said, "Connecting railroad companies may mutually agree to transport the loaded freight cars of each other over their respective lines. Under such agreement each is under obligation to exercise due diligence in providing reasonably safe cars for the service contemplated. * * * The company neglecting this duty is liable in damages for its negligence."

It is also true that the contractual relationship between the two railroads imposed a duty on Southern Pacific to inspect the cars delivered to it. But the trial court found that there had been no breach by Southern Pacific of that duty.

In addition to those corresponding duties the two railroad companies owed to each other by virtue of their contractual relationship, each of them also owed duties to the brakeman, Liles. Missouri Pacific owed him the common law duty to exercise ordinary care to avoid injuring him. Chicago, Rock Island & Pacific Ry. Co. v. Northwestern Ry. Co., supra. Southern

Pacific owed him the same common law duty and also the duties imposed by the F.E.L.A. and the Safety Appliance Act.

Thus, we have a situation where each of the two railroads has breached a duty owed to Liles, imposing on them joint liability for his injury. Missouri Pacific, in addition, has breached a special duty it owed to Southern Pacific because of their contractual relationship. Southern Pacific has not breached its special duty to Missouri Pacific. Under those circumstances we hold that Southern Pacific is entitled to recover from Missouri Pacific full indemnity for the amount it paid Liles in the good faith reasonable settlement of his claim. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114; Humble Oil & Refining Co. v. Martin, 148 Tex. 175, 222 S.W.2d 995; Austin Road Co. v. Pope, 147 Tex. 430, 216 S.W.2d 563; Wheeler v. Glazer, (Tex.Sup.Ct.), 137 Tex. 341, 153 S.W.2d 449, 140 A.L.R. 1301.

The appellant cites as the principal authority for its position Galveston, Houston & San Antonio Ry. Co. v. Nass, 94 Tex. 255, 59 S.W. 870. That case is distinguishable on its own facts. There a railroad company employee, in a fact situation quite similar to the one we have here, recovered judgment against his employer for injuries resulting from defective brakes on a freight car. The employer railroad to whom the defective car had been delivered by another railroad sought to recover indemnity from the railroad company which had delivered the defective car to it. The distinguishing fact, however, is in the finding that the employer railroad company had negligently failed to inspect the car delivered to it. It, thus, breached a duty owed by it to the delivering railroad company. 44 Am.Jur., Railroads, Sec. 381.

Southern Pacific, as alternative relief, sought contribution from Missouri Pacific, pursuant to Art. 2212, V.A.T.S. The question has been raised as to whether such relief is available since the settlement of Liles was made without judgment having been taken. Our holding on the matter of indemnity makes it unnecessary for us to seek the answer to that question.

The judgment of the trial court is affirmed.