HYATT CHEEK BUILDERS–ENGINEERS COMPANY, Appellant,

v.

The BOARD OF REGENTS OF the UNIVERSITY OF TEXAS SYSTEM and Burden Brothers, Inc., Appellees.

No. 8738.

Court of Civil Appeals of Texas, Texarkana.

July 29, 1980.

Rehearing Denied Oct. 7, 1980.

Ken E. Mackey, Austin, on appeal only, for appellant.

James L. McMurtry, County Atty., Sue F. Eley, Asst. Dist. Atty., Austin, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and DOUGLAS and W. C. DAVIS, JJ.

James A. Williams, Bailey, Williams, Westfall, Lee & Fowler, Dallas, for Hyatt Cheek.

Robert Keith Drummond, Strasburger & Price, Dallas, for Burden Brothers.

Mark White, Atty. Gen., Richard L. Arnett, Asst. Atty. Gen., Austin, Donald G. Stanford, Patterson, Lamberty & Kelly, Dallas, for appellees.

CORNELIUS, Chief Justice.

This suit arose out of a contract for the construction of the Callier Center for Speech and Hearing in Dallas, Texas, an independent organization when the contract was signed, but which later became a part of the University of Texas at Dallas. The appellant, Hyatt Cheek Builders–Engineers Company, was the general contractor for the project and it engaged Appellee Burden Brothers, Inc. as subcontractor to do the plumbing and other mechanical work. After the building was completed, one of the water mains leading to the building ruptured, causing extensive flooding and damage to the building and its contents. The University sued both Hyatt Cheek and Burden Brothers, alleging negligence and breach of contract. Trial was to a jury which found that both Burden Brothers and Hyatt Cheek were negligent in installing the pipe, and that such negligence was a proximate cause of the damages. The jury also found that Burden Brothers and Hyatt Cheek failed to perform their work in a good and workmanlike manner as required by the contract, and that such failure was a proximate cause of the damage. Based on the jury's findings of damages,[1] the trial court rendered judgment for the University for $268,925.00 together with pre–judgment interest, for a total award of $337,600.31. Hyatt Cheek appeals, assigning 62 points of error. Burden Brothers assigns 37 cross–points.

Hyatt Cheek's first 32 points attack the sufficiency of the evidence to support the findings of negligence and proximate cause under Special Issues 3 and 4. In answer to those issues the jury found that Hyatt Cheek was negligent in failing to require Burden Brothers to perform the work properly. The general contract obligates Hyatt Cheek to supervise and assume responsibility for the work of all subcontractors and their employees. The points of error assert that because of a three-way contract which Burden Brothers executed with Callier and the City of Dallas, Hyatt Cheek was relieved of its duty to supervise. The argument is based on three theories: (1) that the three-way contract constituted a novation; (2) that the three–way contract made

1. The trial court reduced the jury's damage findings slightly to correspond with the University's pleadings.

Hyatt Cheek's supervision under the general contract impossible; and, (3) that the three–way contract is inconsistent with the general contract and therefore supersedes it. In addition, Hyatt Cheek contends that if it is liable to the University, the court should have granted it indemnity against its subcontractor, Burden Brothers.

The general contract is a standard form agreement dated August 25, 1966, between the owner, Callier Hearing and Speech Center, and the contractor, Hyatt Cheek. The contract grants Hyatt Cheek authority to award subcontracts for any part of the construction work, but it provides in Article 36 that:

"The Contractor agrees that he is as fully responsible to the Owner for the acts and omissions of his subcontractors and of persons either directly or indirectly employed by them, as he is for the acts and omissions of persons directly employed by him.

"Nothing contained in the Contract Documents shall create any contractual relation between any subcontractor and the Owner."

Article 37(a) of the general contract provides that:

"The Subcontractor agrees–

"(a) To be bound to the Contractor by the terms of the Agreement, General Conditions of the Contract, the Supplementary General Conditions, the Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner."

The general contract also contemplates the three–way contract with the City of Dallas. One clause of the general contract provides:

"The water and sanitary sewer consists of mains as shown on sheets A–3 and A–4. The water and sanitary sewer shall be constructed by a *contractor* approved by the architect/engineer. *The contractor* shall enter into a three–way contract between the Callier Hearing and Speech Center, the City of Dallas and himself for the construction of the system in accordance with the standards of the City of Dallas Water Department." (Emphasis added.)

After execution of the general contract with Callier, Hyatt Cheek subcontracted with Burden Brothers, Inc. for it ". . . To furnish all labor, materials and equipment necessary to complete the plumbing, heating, ventilating, air conditioning, water lines, storm sewer & sanitary sewer work as set forth in the plans, specifications, addendum nos. 1, 2, 3 & 4 and Exhibit 'A', entitled 'CALLIER HEARING & SPEECH CENTER, DALLAS, TEXAS' . . .". The subcontract also provided that all of the general contract conditions, plans and specifications for the job were incorporated into and became a part of the subcontract. After execution of the subcontract, Callier and Burden Brothers entered into the three–way contract referred to in the general contract and as required by the Dallas City Code. That contract was required because some of the lines crossed Dallas city property. The three–way contract requires the City of Dallas to inspect the work to insure that the installation is ". . . in conformity with the layout, plans and specifications approved by the City for the area, . . .".

The break which caused the damage to Callier's property occurred in that portion of the work performed by Burden Brothers. It is undisputed that Hyatt Cheek did not supervise Burden's work in that area, but Hyatt Cheek contends that it was prevented from doing so, or was relieved from the responsibility for doing so, by the execution of the three–way contract which calls for supervision by the City. We cannot agree. Since the jury found Hyatt Cheek failed to properly supervise the work, and no jury issue was submitted on whether it was relieved from that responsibility, Hyatt Cheek can sustain its contentions here only if the execution of the three–way agreement relieved it of the duty of supervision *as a matter of law*. We do not believe a reasonable construction of the pertinent contracts can lead to such a conclusion. Although the three–way contract provided for supervision by the City, there is no provision in it which expresses or even

implies that Hyatt Cheek is thereby relieved of its responsibility to supervise. The fact that another is subsequently obligated to supervise work does not necessarily relieve one who has previously contracted to supervise it, unless the subsequently assumed obligation to supervise is incompatible with the former. That is not the case here. Hyatt Cheek, as general contractor, was obligated to supervise the work to insure that it was performed in a good and workmanlike manner; whereas the City's duty of supervision was primarily concerned with the observance of city ordinances and building codes. While those duties may be duplicative in some respects, they certainly are not incompatible to the extent that they cannot co-exist. Nor did the three-way contract amount to a novation or supersede the general contract and its obligations. A novation requires a new agreement between the same parties that is intended to replace the original obligation. 41 Tex. Jur.2d Novation § 1, p. 546; § 6, p. 551; § 7, p. 554, and cases there cited. The three-way contract did not supersede the general contract as a matter of law, because the two contracts are not inconsistent; indeed, the general contract contemplated and required the execution of the three-way contract. See *Chastain v. Cooper & Reed*, 152 Tex. 322, 257 S.W.2d 422 (1953). Furthermore, all of the contracts referred to the others and were incorporated by reference into a single integrated agreement. See 17A C.J.S. Contracts § 298, pp. 128, 131.

We do, however, agree with Hyatt Cheek that the court should have allowed it indemnity against Burden Brothers. The claim for indemnity was properly pleaded, and no jury issue was necessary on the question because Hyatt Cheek's right to indemnity, in the event it was held liable to the University, was a question of law.

Although the law ordinarily does not favor indemnity between wrongdoers, in certain situations one tort-feasor is entitled to full indemnity from his co-tort-feasor. *Austin Road Co. v. Pope*, 147 Tex. 430, 216 S.W.2d 563 (1949). One of those situations is when one tort-feasor has breached a duty he owed both to his co-tort-feasor and to the injured third party. In those circumstances, though both tort-feasors have committed wrongful acts or omissions toward the injured third party and are both liable to him, as between themselves, the blameless one should be allowed indemnity. *Humble Oil & Refining Co. v. Martin*, 148 Tex. 175, 222 S.W.2d 995 (1949); *Austin Road Co. v. Pope*, supra; *Wheeler v. Glazer*, 137 Tex. 341, 153 S.W.2d 449 (1941); *Missouri Pacific Railroad Co. v. Southern Pacific Co.*, 430 S.W.2d 900 (Tex.Civ.App. Houston-14th Dist. 1968, writ ref'd n. r. e.); *Tobin & Rooney Plastering Company v. Giles*, 418 S.W.2d 598 (Tex.Civ.App. Texarkana 1967, no writ). The proper method to determine whether indemnity should be allowed in such a case is to consider the one seeking indemnity (Hyatt Cheek here) as though he were a plaintiff suing the other tort-feasor (Burden Brothers here) in tort, and then determine whether one such as plaintiff, though guilty of a wrong against a third person, is nevertheless entitled to recover against his co-tort-feasor. *Austin Road Co. v. Pope*, supra; M. Hodges, *Contribution and Indemnity Among Tort-feasors*, 26 Tex.L. Review 150 (1947). That is precisely the situation we have here. Both Hyatt Cheek and Burden Brothers have wronged the University and are liable to it, but Burden Brothers also owed a duty to Hyatt Cheek to perform its subcontract in a good and workmanlike manner in accordance with the plans and specifications. And while that duty arose by contract, the negligent performance of a contractual duty is a tort as well as a breach of contract. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947); *Davis v. Anderson*, 501 S.W.2d 459 (Tex.Civ.App. Texarkana 1973, no writ). Burden Brothers asserts that indemnity is not proper because it and Hyatt Cheek were in pari delicto, citing the rule that persons in pari delicto may not have indemnity against each other. That rule is not applicable here. It applies only when tort-feasors are in pari delicto *as to each other*, i. e., they have each breached a duty to the other. *Austin Road Co. v. Pope*, supra;

*Strakos v. Gehring*, 360 S.W.2d 787, 797 (Tex.1962); *Richards Mfg. Co. v. Aspromonte*, 557 S.W.2d 543 (Tex.Civ.App. Houston–1st Dist. 1977, no writ). Obviously the defendants were in pari delicto as to the injured third party; otherwise, they would not be joint tort–feasors at all. The fact that they are in pari delicto as to the injured third party does not defeat indemnity if one tort–feasor has breached a duty to his co–tort–feasor, and the other has not. The right to indemnity having been established as a matter of law upon the adjudication of Hyatt Cheek's liability to the University, the trial court should have allowed it full indemnity against the co–tort–feasor Burden Brothers.

■ It is also urged by Hyatt Cheek, and Burden Brothers by cross–points, that the court erred in the form of negligence issues used. The issues submitted the question of negligence by asking separately if each of the defendants was negligent, and then instructing the jury that in answering the question it could consider only certain acts or omissions which had been both pleaded and supported by some evidence. Such a form of submission has been expressly approved by our Supreme Court and was not error in this case. *Scott v. Atchison, T. & S. F. R. Co.*, 572 S.W.2d 273 (Tex.1978).

■ Burden Brothers also urges that the special issue submission was erroneous because it failed to provide for an apportionment of the degree or quality of the respective acts of negligence of Burden Brothers and Hyatt Cheek which were found to be proximate causes of the University's damages. We disagree. Hyatt Cheek and Burden Brothers were joint tort–feasors as to the university. Although they were guilty of separate acts of negligence, their negligence combined to cause the injury to the plaintiff. If Burden Brothers desired to raise the issue of comparative negligence between it and Hyatt Cheek, it should have requested an appropriate issue in substantially correct language. Tex.R.Civ.P. 279; *Krishnan v. Garza*, 570 S.W.2d 578 (Tex.Civ. App. Corpus Christi 1978, no writ). The matter becomes immaterial, however, in

view of our conclusion that Burden Brothers must fully indemnify Hyatt Cheek.

■ Hyatt Cheek also challenges the sufficiency of the evidence to support the jury's finding that it failed to install the meter vault in a good and workmanlike manner and that such failure was a proximate cause of the damages.

The break in the pipe occurred in that section laid by Burden Brothers on the street side of the meter vault which was installed by Hyatt Cheek. The University contends that improper construction of the meter vault contributed to improper pipe installation and the ultimate break in the pipe. Hyatt Cheek argues that the plans provided by the architects were so specific that they controlled, and because it built the meter vault in strict conformity with those specifications, it could not have failed to perform its work in a good and workmanlike manner. There was evidence that the meter vault was too small, but Hyatt Cheek contends that the size was not a defect which could have contributed to the break. In response, the University points to evidence that Hyatt Cheek poured the meter pit incorporating a too small sleeve placed by Burden Brothers and that this sleeve contributed to the lack of independent movement between the pipe and pit itself. The University also places heavy emphasis on Hyatt Cheek's contractual obligation to provide the highest grade of workmanship in the installation of the meter pit.

We find there is sufficient evidence to support the jury's answers to Issues 10a and 10b although, in light of our other holdings, Hyatt Cheek's points in this regard would not change the result of this appeal if sustained.

Both Hyatt Cheek and Burden Brothers complain of the trial court's refusal to admit evidence that the engineers and the contractors orally agreed to change the specifications to call for the use of four inch pipe rather than six inch pipe. It is argued that the evidence was admissible and that its exclusion placed the contractors in a bad

light before the jury because the only evidence the jury had was that the plans called for six inch pipe, whereas the contractors used four inch pipe. The trial judge excluded the evidence on the basis that it was an improper attempt to vary the terms of the written contract by extraneous evidence.

▓▓▓ A written contract, not required by law to be in writing, may be modified by subsequent oral agreement, even if it provides that it can be modified only by a written agreement. *Morrison v. Insurance Co. of North America*, 69 Tex. 353, 6 S.W. 605 (1887); *Adams v. Can–Dee Oil Corp.*, 357 S.W.2d 808 (Tex.Civ.App. Waco 1962, writ ref'd n. r. e.); *Apperson v. Shofner*, 351 S.W.2d 367 (Tex.Civ.App. Waco 1961, no writ); 13 Tex.Jur.2d Contracts § 270, p. 504. Such a written bargain is of no higher legal degree than an oral one, and either may vary or discharge the other. *Morrison v. Insurance Co. of North America*, supra; *Apperson v. Shofner*, supra. Nevertheless, we conclude that the exclusion of the evidence was harmless error. Tex.R.Civ.P. 434. The jury was instructed to consider only certain listed acts or omissions in determining whether Hyatt Cheek and Burden Brothers were negligent, and the use of four inch pipe was not one of the listed acts. The failure to explain the use of the smaller pipe may have cast the contractors in somewhat of a bad light before the jury, but considering the fact that the use of small pipe was neither pleaded as an act of improper workmanship nor mentioned as such in the evidence or the jury instructions, we do not believe it contributed to the rendition of an improper judgment.

▓▓▓ Hyatt Cheek and Burden Brothers also attack the award of damages. They first argue that the court improperly allowed pre–judgment interest on the damages resulting from the destruction of certain business papers and medical records, the interruption or loss of business activity, loss of personal property in the building, and cost of repairs to the building. Where damages, either ex contractu or ex delicto, are complete at a definite time, and the amount is determinable by fixed rules of evidence and known standards of value, interest is recoverable from the date of the accrual of the cause of action, even though the precise amount of the damage is not established until trial. *Maxey v. Texas Commerce Bank of Lubbock*, 571 S.W.2d 39 (Tex.Civ.App. Amarillo 1978), *writ ref'd n. r. e. per curiam*, 580 S.W.2d 340 (Tex.1979). The damages for destruction of the business papers, medical records and personal property were of such character, and pre–judgment interest was properly allowed on those amounts. *Melody Home Manufacturing Company v. Morrison*, 502 S.W.2d 196 (Tex. Civ.App. Houston–1st Dist. 1973, writ ref'd n. r. e.); *Statler Hotels v. Herbert Rosenthal Jewelry Corp.*, 351 S.W.2d 579 (Tex. Civ.App. Dallas 1961, writ ref'd n. r. e.). Interest should not have been allowed on the other items of damage, because the extent of the damage due to the interruption of business could not be determined at that time by fixed standards, nor could it at that time be determined precisely what corrective measures would be necessary to repair the building. *Metal Structures Corp. v. Plains Textiles, Inc.*, 470 S.W.2d 93 (Tex. Civ.App. Amarillo 1971, writ ref'd n. r. e.).

▓▓▓ Appellants also contend that the recovery of specific amounts for the destruction of business papers and medical records and the allowance of other specific amounts for loss of "personal property" amounted to a double recovery. We cannot agree. Business papers and records are personal property, of course. But a study of the record here reveals that all parties made a distinction throughout the trial between the business papers and medical records and the other personal property. For example, the University introduced a document labeled "Callier Center for Communication Disorders Partial Recap of *Contents* Water Damage in May 1974" which lists damage to cameras, video recorders, televisions, furniture and other equipment, amounting to $185,457.90. (Emphasis supplied.) Another document titled "Callier Center for Communication Disorders List of *Valuable Papers Lost* from Water Damage

in May 1974" lists damage caused by the necessity for restoration of records, reconstruction of research data and restoration of research records totalling $66,003.00. (Emphasis supplied.) Another document listed damages for non–productive time and lost patient receipts at $61,207.00 and another document listed the amount of water damage to the building as $47,683.91. Considering these circumstances, it appears there was a distinction made during trial between loss of business records and damage to other personal property, and there is nothing to indicate that the jury was misled into awarding a double recovery for those items.

■ Burden Brothers assigns eight of its cross–points to assert that the trial court erred in striking its trial amendment, in refusing to submit certain requested special issues, in refusing to admit into evidence a letter from the architects instructing the director of the Callier Center to apply for utility services, and in allowing a witness to testify as to who customarily applied for city water permits. These points essentially present the question of whether the University was contributorily negligent in failing to make written application for water service with the City of Dallas. Burden Brothers contends that had Callier applied for a city water service permit it would have caused the city to install the water service line, and had the city installed the line it would have done so correctly and the break would have never occurred. One exhibit which Burden Brothers unsuccessfully attempted to introduce into evidence was a letter on City of Dallas stationery addressed to City Manager George Schrader concerning the break in the pipe. The letter discusses Callier's failure to apply for a water permit and the installation of the water main that later broke. The letter stated in part:

"... Normally, the City would have then built a service line between the main and the meter and installed the meter. This would have been done as a result of the owner applying for a permit. We use this procedure of the City making the connection and installing the meter in order to prevent unauthorized taps on the City water mains and this procedure is provided for by Section 35–31 of the City Code. In this case, Callier did not request service but instead had their contractor build the service line connecting to the main and also installed their own meter. This was without authorization or inspection by the City...."

The remainder of the letter speculates on the amount of water Callier used for which it was not billed and the probable amount that Callier owed to the City for such water.

The duty Callier owed, if any, was to the City of Dallas and not to Burden Brothers. The permit and inspection procedure were to insure that Callier would be billed for the water it used, not to protect Callier from negligent construction. From the documents referred to above and from the evidence in general it appears that even if Callier had applied for a permit, the City of Dallas would not have laid the line because it was done pursuant to the three–way contract, and the only difference would have been that the City would have gained a new customer for billing purposes. The claim of contributory negligence in this regard must fail because there is no evidence that Callier's application for a permit would have made any difference in the construction of the line or in the causation of the damages.

Burden Brothers also asserts that the trial court erred in refusing to submit its requested special instruction concerning unavoidable accident. Unavoidable accident was pleaded and it is asserted that there is evidence to support the requested instruction, i. e., that soil movement caused the pipe to break irrespective of the type of installation of the water line.

■ Unavoidable accident is present when an event occurs which was not proximately caused by the negligence of any party to the event. *Yarborough v. Berner*, 467 S.W.2d 188 (Tex.1971). There was some evidence of soil movement, but the uncontroverted evidence also revealed that the soil movement that led to the break was

something which a reasonably prudent contractor would have or should have foreseen. The evidence supports the view that had the pipe been properly laid, the soil movement would not have caused the break.

Hyatt Cheek's points of error 57 and 59 are sustained, as are Burden Brothers' cross–points 31 and 33 concerning pre–judgment interest allowed on the interruption of business and the repair of the building. All other points are respectfully overruled.

The judgment of the trial court is reformed to delete pre–judgment interest on the interruption of business damages and cost of building repairs and to award Hyatt Cheek full indemnity from Burden Brothers for the total amount of the judgment. As reformed, the judgment is affirmed.

### ON MOTION FOR REHEARING

All parties have filed motions for rehearing. After careful consideration of them, particularly the points raised by Burden Brothers, we have concluded that our original disposition of this cause was in error insofar as it reformed the judgment below to allow Hyatt Cheek full indemnity against Burden Brothers.

As stated in our original opinion, indemnity between joint tort–feasors is allowed when one of them has breached a duty owed to the other, but the other is blameless toward the first. *Austin Road Co. v. Pope*, 147 Tex. 430, 216 S.W.2d 563 (1949). The method to determine if indemnity should be allowed is to consider the one seeking indemnity as though he were a plaintiff suing the other in tort, and then determine whether one such as plaintiff, although guilty of a wrong against a third person, is nevertheless entitled to recover against the other tort–feasor.

Burden Brothers correctly points out that Hyatt Cheek was responsible for the construction and installation of the meter box. Evidence was presented that the pipe ruptured at a point near where it entered the meter box. In response to special issues, the jury found that Hyatt Cheek failed to install the meter box

in a good and workmanlike manner, and that such failure was a proximate cause of the damages. In every contract between a contractor and his subcontractor, the law implies an obligation on the part of the contractor to so perform his part of the work that the subcontractor's ability to perform his work is not prevented or impaired. *Citizens National Bank of Orlando v. Vitt*, 367 F.2d 541 (5th Cir. 1966); 3 Corbin On Contracts § 571. Applying that rule and the above mentioned jury findings to the fact situation here, it appears that Hyatt Cheek breached a duty it owed to Burden Brothers which caused or contributed to the loss. In that situation, applying the test approved in *Austin Road Co. v. Pope*, supra, it is clear that Hyatt Cheek as plaintiff in a direct suit against Burden Brothers would be barred from recovery by its own dereliction of duty. Therefore, indemnity is not proper.

Our judgment will be modified to delete the provisions which reformed the judgment below to allow Hyatt Cheek full indemnity against Burden Brothers. In other respects our original disposition will remain unchanged. Except as herein indicated, all motions for rehearing are respectfully overruled.