### C. ·W. Hahl v. Richard Deutsch.

Decided February 12, 1906.

**1.—Finding of Fact—Conflicting Evidence.**

Where the evidence is conflicting a finding of fact by the trial court will not be disturbed.

**2.—Contract—Acceptance—Estoppel.**

If in fact plaintiff did not comply with his contract for boring a well, and was not excused therefrom by some act or interference on the part of defendant, the latter was not thereby bound to refrain from using the well or else incur liability for the contract price. He had spent money on the work, and his subsequent use of it did not necessarily constitute an acceptance.

**3.—Contract—Failure to Complete—Ratable Compensation.**

The plaintiff having been prevented by the defendant from completing the contract, was entitled to recover ratably for the work actually done.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*L. B. Moody,* for appellant.—The court erred in his conclusion of fact that on or about the 6th day of April, 1903, plaintiff and defendant made a verbal contract, by the terms of which plaintiff was to drill for defendant a well upon land owned by him in Harris County, Texas, near the town of Aldine, because the same is contrary to the great weight and preponderance of the evidence, in that the great weight and preponderance of the evidence shows that the well in question was drilled under a written contract between the defendant and the Southwestern Engineering Company, of which plaintiff was a member.

The court erred in his conclusion of fact that the defendant accepted said well, because the same is unsupported by any evidence in this case, and is directly contrary to all of the evidence in the case upon this point.

*J. A. Gillette,* for appellee.

Gill, Chief Justice.—Richard Deutsch brought this suit to re-

cover of C. W. Hahl $1,012, the alleged contract price for sinking a well for. Hahl. He pleaded the contract of employment, the performance of the work, and prayed to recover the contract price. He also pleaded that the contract as first made was modified on account of the nature of a part of the strata through which he drilled, and the size of the casing was thereby reduced from ten to eight inches. That he completed 250 feet of the well with eight inch casing, but was prevented by defendant from completing the 60 feet next to the surface by failure of defendant to furnish eight inch casing, and by defendant's insistence that the last 50 feet be finished in ten inch casing. He also alleged that through this and other acts of defendant he was prevented from making an agreed test.

He prayed that if the court could not allow him the contract price per foot for the well, that he be allowed to recover upon a *quantum meruit* the value of the work he had done.

The answer of defendant was a general denial.

A trial to the court without a jury resulted in a judgment for plaintiff for $562.50, and the defendant has appealed.

By the first assignment appellant assails the finding of the trial court to the effect that the well in question was sunk under a verbal contract as alleged, and not under a written contract of date February 16, 1903. The point made is that the finding is against the great weight and preponderance of the evidence. The facts bearing upon the issue are in substance as follows: On February 16, 1903, Alfred Meurer for the Southwestern Engineering Company, entered into the following written contract with C. W. Hahl:

"State of Texas,  }
  Parish of Harris. }

Houston, Texas, 2-16, 1903.

This agreement, entered into by and between the Southwestern Engineering Co., Ltd., of Jennings, La., party of the first part, and C. W. Hahl, of Houston, Texas, party of the second part, for the purpose of boring one (1) ten in. (9 5-8) well, said well when completed shall furnish good quantity of water. Party of the second part shall furnish all casing, and necessary feet. Screen delivered at well when test hole is completed. It is further agreed that party of the second part shall pay party of the first part $2.25 per foot for each and every well when completed; and to pay all cash. Party of the first part agrees to make thorough test of the well with P. K. Wood pump, and to furnish at least (500) five hundred gallons of water per minute. Also have well completed by April 1, 1903. (Signed) Southwestern Engineering Co., per Alfred Meurer, C. W. Hahl." The company was a partnership composed of Meurer and the plaintiff Deutsch.

This contract provided for the digging of but one well, and its terms do not disclose the place where it was to be sunk. The provision that each and every well when completed should be paid for in cash at $2.25 per foot is too general to apply to more than the one well, unless supplemented by further agreement, and is obviously not an undertaking on the part of the company to sink more than one well. In pursuance of this contract, Deutsch shipped his machinery to Texas and, according

to his testimony, completed a well on what is designated as the Hahl and Juda place within the time limit, and the well was accepted and paid for. Defendant denied this, and adduced his and other testimony to show that the Hahl and Juda well was sunk under a special arrangement made because the engines had not been placed on the Cornthwaite place when Deutsch's machinery arrived. That the Cornthwaite place was where the well was to be sunk under the written contract. It is undisputed, however, that the Hahl and Juda well was sunk and completed for the price, within the time and according to the terms of the written contract.

The Cornthwaite well is the basis of this suit, and was begun after April 6, 1903, and therefore after the time fixed for the completion of the well provided for in the written contract.

The plaintiff testified, in effect, that the Hahl and Juda well was sunk and completed in fulfillment of the written contract. That after its completion he advised plaintiff (defendant?) that he would dig no more wells under its provisions as his partner had made changes in their printed contract forms which did not suit plaintiff, and he would proceed no further thereunder. That thereupon, on April 6, 1903, he individually entered into a verbal contract with Hahl whereby he undertook to dig a well for him on the Cornthwaite place, by the terms of which he was to sink a "test hole" six inches in diameter for which he was to receive $1.00 per foot whether he found water or not. He was to go a depth of 500 feet unless water was found at a less depth. That if water was found in quantities which justified it, he was to ream out the hole for ten inch casing (to be furnished by Hahl), place the casing, and test the well for Hahl with a "P. K. pump," also to be furnished by Hahl. If after the digging of the test hole it was decided to complete the well, he was to receive an additional $1.33 per foot for enlarging the well, placing the casing and testing it. That he bored one test hole 300 feet, but found no water, and found the rock so hard and thick it would be impossible to complete it. That at Hahl's insistence he sunk another test hole and found water in good quantity at 312 feet, whereupon it was determined between him and Hahl that it should be reamed out, cased and tested. That thereupon he reamed it to a depth of fifty feet and found that a boulder at the side of the hole at that depth rendered it impossible to carry a ten inch casing past that point. Hahl being anxious for water modified the contract and agreed to the placing of an eight inch casing, furnished 250 feet of casing of that diameter, and plaintiff placed it in the well, and the well could have been effectively completed with eight inch casing, but Hahl insisted that the 60 feet next the top be completed with ten inch casing. Plaintiff protested it was impracticable. Hahl then sent down a man named Dixon who procured about 60 feet of ten inch casing, reduced it to eight inches at the lower end so as to connect with the eight inch casing and made threads thereon to effect the connection. Plaintiff protested that the eight inch casing was not long enough; that the threads on the ten inch casing were not properly cut and would not hold, and that on account of deficiency of length there would be ten feet of uncased space in the well. Notwithstanding his protest the ten inch piece was sunk, and Hahl's agents in an effort to connect it with the eight inch twisted

off the connection, and the uncased space was left as plaintiff predicted. On account of quicksand the casing could not thereafter be safely withdrawn. Notwithstanding the defect the water rose to within six feet of the surface, and a day's baling with a ten foot sand bucket did not reduce the water level below 36 feet from the surface of the ground. Hahl failed to supply the "P. K. pump," so that test was not made. In the verbal contract the quantity of water was not guaranteed.

At this point plaintiff demanded his pay, and defendant declined on the ground that the well had not been completed. Plaintiff did nothing further. Defendant proceeded to use the well, and during the season of 1903 irrigated between 50 and 60 acres of land and raised thereon a fair crop of rice. This fact is disclosed by evidence adduced by plaintiff, but the witnesses admit they do not know whether the well supplied water enough to properly irrigate the rice. They saw the pump in operation, and a six inch stream of water being run onto the rice farm. On account of defects in the machinery the full capacity of the well was not used.

Defendant offered no evidence tending to contradict this, but a tenant of defendant who farmed the land in 1904 stated that the well was not used that year because some one had spoiled the well in repairing it. Hahl does not question the statement of Deutsch that the water strata was sufficient, but he denies explicitly that the well was dug under a verbal contract, and insists it was dug under the terms of the written agreement. He defends chiefly on the ground that it was not completed in accordance with its terms. The testimony of Juda strongly supports that of defendant.

It is obvious from the foregoing statement that as to the issue involved in the finding assailed there was a sharp conflict. At most there are two witnesses against one and there are circumstances which tend to support the statements of plaintiff. We are clear that we ought not to disturb the fact finding assailed by the first assignment.

For like reasons the second, third, and fourth assignments are overruled.

The defendant complains by his fifth assignment of the finding of the trial court that defendant accepted the well. We think the assignment should be sustained. Defendant refused to accept the well or to pay for it. As a matter of fact he used the well effectively for one season, but if his testimony is true as to the nature of the contract and the transactions which followed, we find nothing in his conduct which would estop him to defend on the ground that the well had not been completed according to the terms of the agreement. If in fact the plaintiff did not discharge his contract and was not excused therefrom by some act or interference on the part of defendant, the latter was not therefore bound to refrain from using the well or else incur liability for the contract price. The defendant had expended money on it. The land was his. The casing was his, and his subsequent use of it did not necessarily constitute an acceptance. If the plaintiff's theory of the facts is true acceptance is not necessary to his right to recover. We think the facts show that Hahl did not accept the well, and the court erred in holding otherwise.

The sixth assignment is necessarily involved in the disposition of

the first and is disposed of in the same way, as are also others addressed to kindred points.

The thirteenth and fourteenth assignments present the contention that the judgment ought not to stand because the evidence shows that plaintiff did not complete the well according to the contract under which he claims. The effective answer to these assignments is that the respects in which he failed were due to the interference of defendant and his failure to supply material which he had obligated himself to supply. This being true, and plaintiff having in fact reamed out the well and put in the casing either according to the terms of the modified contract or else according to defendant's dictation, he is perhaps entitled to the full contract price per foot for the entire depth, but the court found for him only the 250 feet actually cased with eight inch casing and allowed him $2.25 per foot therefor, which the court found was the contract price. As his compensation was rated by the foot in the contract, we do not think the plaintiff would be relegated to his *quantum meruit,* but might recover ratably the contract price for the footage actually completed, he having been prevented from completing the well by the acts and interference of defendant. On this theory the judgment is supported by the evidence.

There is no evidence of *quantum meruit* value and that additional reason given by the trial court for his judgment is erroneous.

Appellant insists that the court should have allowed a credit of $170 because plaintiff admits that he had run up an account with defendant for that amount. The point is not well taken. The defendant pleaded neither credit, nor offset, nor in reconvention, and it does not appear whether the items going to make up the sum were incurred wholly under the contract with reference to this well. In the present state of the record the court correctly refused to alloy the offset.

All the assignments are overruled except those expressly sustained. We find no error requiring a reversal. The judgment is therefore affirmed.

*Affirmed.*