443 F.2d 611
 8 UCC Rep.Serv. 1210
 UNITED STATES of America for the Use of FRAM CORPORATION,
Plaintiff-Appellant,
v.
Floyd O. CRAWFORD, d/b/a Crawford's Enterprises and
Fireman's Fund Insurance Company of San Francisco,
Defendants-Appellees.
 No. 30571.
 United States Court of Appeals, Fifth Circuit.
 March 29, 1971, As Amended on Denial of Rehearing May 10, 1971.
 
 Henry C. Custer, Perry, Walters, Langstaff, Lippitt & Campbell, Albany, Ga., for plaintiff-appellant.
 Donald D. Rentz, Burt & Burt, Albany, Ga., for defendants-appellees.
 Before TUTTLE, AINSWORTH and SIMPSON, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 In March of 1968, Floyd O. Crawford, doing business as Crawford's Enterprises (hereinafter 'Crawford'), contracted with Fram Corporation (hereinafter 'Fram') for the delivery of eighteen fuel filter/separator units to the U.S. Naval Air Station at Albany, Georgia, for installation by Crawford pursuant to a contract with the Navy. Payment by Crawford was secured by a bond written by Fireman's Fund Insurance Company of San Francisco (hereinafter 'Fireman's Fund'). Fram completed delivery some time in September of 1968. On September 16, 1969, Fram brought suit in Federal District Court against Crawford and Fireman's Fund, pursuant to Section 2 of the Miller Act,[1] alleging that despite Fram's demands for payment, $6,298.50 remained unpaid on the sale. Crawford answered by denying any debt to Fram, and counterclaimed for $19,560 in damages as a consequence of 'inferior and defective parts, material and equipment' furnished by Fram.
 
 
 2
 The case was tried to a jury. All parties moved for directed verdicts in their favor. The Trial Judge denied the motions, and instructed the jury that it might find that Crawford was liable to Fram, that Fram was liable to Crawford, or that neither was liable. The jury returned a verdict in favor of Crawford in the amount of $16,415. Fram's timely motions for a judgment notwithstanding the verdict and for a new trial were denied. From these denials it now appeals. We reverse and remand.
 
 I. Fram's Claim
 
 3
 The contract price for the fuel filter/separator units was $55,564.20. Floyd Crawford admitted at the trial that of that sum, $6,298.50 had not been paid. There was no testimony to the contrary. The appellees maintain that they are excused from further payment by the deficiencies in Fram's performance on the contract. Fram contends, to the contrary, that the Trial Judge should have directed a verdict in its favor on its claim for the $6,298.50. We sustain Fram's contention.
 
 
 4
 It is undisputed that Fram furnished the eighteen fuel filter/separator units called for by the contract, and that Crawford received and installed all eighteen units. Section 2-607 of the Uniform Commercial Code as enacted in Georgia (hereinafter 'Georgia UCC')[2] provides without qualification:
 
 
 5
 'The buyer must pay at the contract rate for any goods accepted.' Acceptance of goods occurs when the buyer 'does any act inconsistent with the seller's ownership.' Georgia UCC 2-606(1)(c). No case is reported in which the Georgia courts have had occasion to interpret section 2-606(1)(c). Courts in other jurisdictions, interpreting the same section of the Uniform Commercial Code, have held that installation by the buyer of heavy equipment supplied by the seller is an act inconsistent with the seller's ownership. See Marbelite Company v. City of Philadelphia, 1966, 208 Pa.Super. 256, 222 A.2d 443 (traffic signal equipment); Park County Implement Co. v. Craig, Wyo. 1964, 397 P.2d 800 (hoist and dump bed on vehicle). We believe that the Georgia courts, confronted with the same issue in the instant case, would give section 2-606(1) (c) the same construction. A buyer who has accepted goods may under certain conditions revoke his acceptance. Georgia UCC 2-608. However, once Crawford had accepted and installed the units supplied in place on the Albany site, any subsequent attempt at revocation was ineffective. Cf. Marbelite Company v. City of Philadelphia, supra; F. W. Lang Co. v. Fleet, 1962, 193 Pa.Super. 365, 165 A.2d 258; Ludden & Bates Southern Music House v. Toney, 1929, 39 Ga.App. 719, 147 S.E. 719; McCall v. Merriman, 1923, 29 Ga. App. 578, 116 S.E. 215.
 
 
 6
 In a diversity case in federal court, 'there must be a conflict in substantial evidence to create a jury question.' Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365, 375. Here, as to Crawford's duty to pay Fram the $6,298.50 remaining on the contract price, there was no conflict in the evidence whatsoever. Thus the Trial Judge should have granted Fram's motion for a judgment notwithstanding the verdict as to this portion of the case. We conclude that this is an appropriate instance in which to remand with directions that judgment be entered for the plaintiff on its claim. See Fed.R.Civ.P. Rule 50(d); Neely v. Martin K. Eby Construction Co., 386 U.S. 317, 326-329, 87 S.Ct. 1072, 1078-1080, 18 L.Ed.2d 75 (1967); Mills v. Mitsubishi Shipping Company, 5 Cir., 1966, 358 F.2d 609, 614, cert. denied, 386 U.S. 1036, 87 S.Ct. 1474, 18 L.Ed.2d 600.
 
 II. Crawford's Counterclaim: Liability
 
 7
 Fram contends that it is entitled to a judgment notwithstanding the verdict on the issue of its liability to Crawford on Crawford's counterclaim, or to a new trial on that issue. We reject the first contention and sustain the second.
 
 
 8
 Crawford's amended complaint alleges damages on Fram's account in the amount of $19,560. It is undisputed that the first filter/separator unit was due at the Albany site on April 23, 1968, and arrived late. There was testimony which tended to show that Crawford was damaged by the delay. Certain defects in the materials shipped were corrected soon after their discovery, at no cost to Crawford; others, according to Crawford's witnesses, cost Crawford money to rectify. These allegedly included a defective spider assembly, a damaged handle, and a number of cracks and breaks in the equipment which resulted in leaks and necessitated difficult welding repairs. There was evidence that, while the contract (including warranties) required Fram to deliver the fuel filter/separator units fully assembled, most of the canisters were shipped separately from the vessels which were to contain them, involving Crawford in unbargained-for expenses on assembly and installation. Mr. Crawford testified that the Navy was withholding $3,000 in final payment on the Albany construction contract, that he had lost thousands of dollars in Government contracts because he was now unable to procure a Miller Act bond, and that Fram was responsible for much of the former loss and all of the latter.
 
 
 9
 Section 2-607(3)(a) of the Georgia UCC provides that 'where a tender has been accepted * * * the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy * * *.' The evidence in the record does not conclusively establish that Crawford complied with the requirements of section 2-607(3)(a). Mr. Crawford testified to numerous phone calls complaining to Fram; he did not testify fully to the content of these calls, most of which seem to have been made after the first unit arrived but before anything else had been shipped. Approximately a month after Fram's last delivery, Crawford sent a routine letter to Fram thanking Fram for its 'prompt and efficient service' and notifying Fram that its invoices would shortly be 'placed in line for payment.' Six weeks later, on December 11, 1968, Crawford sent Fram a letter of an entirely different character, threatening Fram with the rejection of six units based on defects identified by the Navy, and referring to previous telephone calls on the subject. A telegram respecting (apparently) a different set of defects was sent by Crawford to Fram on or about June 6, 1969. There was considerable testimony, some of it conflicting, as to when and how the various defects referred to in this correspondence first came to light. Taken as a whole, the evidence was not so onesided as to warrant a directed verdict for either party. Rather, it raised an important question for the jury as to whether Crawford had discovered and notified Fram of the defects within the reasonable time required by Georgia UCC 2-607(3)(a).
 
 
 10
 In instructing the jury, the Trial Court read verbatim certain sections of the Georgia UCC, including sections 2-606 (defining 'acceptance') and 2-607(3)(a), referred to in the preceding paragraph, but left the jury without proper direction as to how the statutory language was to be applied to the disputed facts in the case.[3] The jury was told at some length what findings would warrant them in reaching a verdict for Fram or Crawford or both. No mention was made, however, of the duty imposed by the provisions of section 2-607(3)(a) on Crawford as a condition of recovery on its counterclaim. The Court's instruction on the counterclaim ended as follows:
 
 
 11
 If you conclude that the material was deficient and that Mr. Crawford did not knowingly accept it in a defective condition and that, as a result of such deficiencies, that Mr. Crawford did sustain these damages as a direct result of such deficiencies, then all of these items which have been referred to by Mr. Crawford during the course of the trial of this case would be legitimate items for you to consider in awarding damages to Mr. Crawford against Fram.
 
 
 12
 It is obvious that this instruction was at odds with the provisions of section 2-607(3)(a). Fram's request for a fevised instruction clarifying the applicability of section 2-607(3)(a) was therefore improperly denied. Viewing the charge on the counterclaim as a whole, Lyle v. R. N. Adams Construction Company, 5 Cir., 1968, 402 F.2d 323, 327, we conclude that it was erroneous and prejudicial to Fram, entitling Fram to a new trial on the issue of its liability to Crawford. Cf. Lesser v. United States, 2 Cir., 1966, 368 F.2d 306, 309-310; Lessig v. Tidewater Oil Company, 9 Cir., 1964, 327 F.2d 459, 473, cert. denied, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046; Moses v. Central Louisiana Electric Company, 5 Cir., 1963, 324 F.2d 69, cert. denied, 376 U.S. 942, 84 S.Ct. 799, 11 L.Ed.2d 767.
 
 
 13
 * * *d,
 
 III. Crawford's Counterclaim:
 Damages
 
 14
 The largest single component of Crawford's counterclaim for damages was $10,000 in lost profits. Crawford claimed that it had lost this amount on Government contracts which it would have received but for the fact that no insurer would furnish Crawford a Miller Act bond until his dispute with Fram was resolved. Fram contends that it was entitled to an instruction directing the jury to give no consideration to this portion of Crawford's claim. The District Court failed to give any such instruction. We agree with Fram that this was error.
 
 
 15
 A buyer who has accepted goods and complied with the requirements of Georgia UCC 2-607 may recover 'as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.' Georgia UCC 2-714(1). In a proper case, consequential damages may be recovered. Georgia UCC 2-714(3), 2-715(2). Crawford contends, in effect, that these provisions must be construed in the light of prior Georgia law, and that the instant case is controlled by the decision of the Georgia Court of Appeals, Division 1, in Atlanta Gas Light Co. v. Newman, 1953, 88 Ga.App. 252, 76 S.E.2d 536. The Court there stated as the Georgia rule:
 
 
 16
 The loss of profits from the destruction or interruption of an established business may be recovered for if the amount of actual loss is rendered reasonably certain by competent proof; * * * Each case must be examined to see if under its particular facts the profits involved are capable of reasonable ascertainment. * * *
 
 
 17
 76 S.E.2d at 537. We conclude from our examination of the Georgia authorities that the Atlanta Gas Light rule is the applicable rule in this case.[4] We hold, however, that Crawford failed to satisfy the evidentiary requirements of that rule.
 
 
 18
 Mr. Crawford testified at the trial that he had applied to at least two firms for a Miller Act bond so as to permit him to bid for other Government construction contracts, and that both had turned him down on the basis of his pending litigation with Fram. He offered no documentation in support of this claim, and stated on cross-examination that none was available. One of the firms to which he claimed to have applied was Fireman's Fund. Fireman's Fund was Crawford's codefendant in the suit; yet Crawford did not call a representative of Fireman's Fund to testify.
 
 
 19
 Mr. Crawford further testified that 'in 1969 and thus far in 1970 I haven't done a dime's worth of government business.' He stated that he had bid on certain jobs but that the Government had rejected his bids for lack of a bond. He estimated that, based on an average profit ratio of 25 per cent on Government contracts in the past, he would have made at least $10,000 on these jobs. No documentation was proffered as to the details of the 'lost' jobs or the purported average profit ratio.
 
 
 20
 Mr. Crawford's statements as to refusals by bonding companies and their reasons for refusing, and as to rejections of bids by the Government and its reasons for rejection, were inadmissible hearsay. Fram's attorneys so contended throughout this segment of the trial, and at length the Trial Court agreed: 'Yes, that is hearsay, Mr. Rentz, him saying what other people told him, the Navy and all of that. That's not admissible.' At the close of the trial, Fram requested that the District Judge instruct the jury not to consider any evidence in connection with the $10,000 claim for lost profits. The Trial Judge instead instructed the jury to give consideration to all of Crawford's contentions, including 'loss of opportunity to do business as a result of being unable to obtain a bond.' Fram reiterated its argument, to no avail, in its objections to the instructions and its motions for a j.n.o.v. and a new trial.
 
 
 21
 The District Judge's failure to instruct the jury as requested by Fram was error. The jury should have been told to disregard the hearsay evidence. It was uncorroborated and prejudical. Cf. Sterling Drug, Inc. v. Cornish, 8 Cir., 1966, 370 F.2d 82, 85-86. We seriously question whether a Georgia court would conclude that Mr. Crawford's testimony taken as a whole, if credited, rendered the amount of actual lost profits from unrelated contracts 'reasonably certain.' See Atlanta Gas Light Co., supra. There was virtually no competent proof that Fram caused Crawford any loss of this type at all. Cf. Camilla Cotton Oil Co. v. Spencer Kellogg and Sons, Inc., 5 Cir., 1958, 257 F.2d 162, 166; Kingston Pencil Corporation v. Jordan, 1967, 115 Ga.App. 333, 154 S.E.2d 650, 653.
 
 
 22
 There can be little doubt that Crawford's claim for lost profits from unrelated contracts figured in the jury's assessment of damages. The damages enumerated by Mr. Crawford at trial from other resources totaled $10,995, or $5,420 less than the jury's verdict. It is impossible to determine what portion of the jury's general verdict is allocable to this particular claim. Thus, if the case is retried on the issue of Fram's liability to Crawford, it must be retried on the issue of Crawford's damages as well. In any subsequent trial, Crawford's evidence on the claim for lost profits must be confined to direct evidence supported by adequate documentation.[5]
 
 
 23
 The judgment of the District Court is reversed, and the cause remanded with directions that the judgment in favor of Crawford be vacated; that a judgment be entered in favor of Fram Corporation against both defendants in the amount of $6,298.50; and for further trial or proceedings not inconsistent with this opinion.
 
 
 24
 Reversed and remanded.
 
 
 
 [1]
 40 U.S.C. 270b
 
 
 [2]
 30A Code of Georgia Annotated, Title 109A
 
 
 [3]
 Cf. Pritchard v. Liggett & Myers Tobacco Company, 3 Cir., 1965, 350 F.2d 479, 487 (concurring opinion), cert. denied, 382 U.S. 987, 86 S.Ct. 549, 15 L.Ed.2d 475; Williams v. Powers, 6 Cir., 1943, 135 F.2d 153, 157
 
 
 [4]
 The Georgia courts have followed atlanta Gas Light in Kingston Pencil Corporation v. Jordan, 1967, 115 Ga.App. 333, 154 S.E.2d 650, 653; Carter v. Greenville Service Co., 1965, 111 Ga.App. 651, 143 S.E.2d 1, 2; and Kroger Company v. Perpall, 1962, 105 Ga.App. 692, 125 S.E.2d 511, 515
 
 
 [5]
 It is not unreasonable to suppose that bonding companies, who may become liable to suppliers on Miller Act bonds, hesitate to write them for a contractor who refuses to settle claims against him by suppliers such as Fram. But Fram, as we have noted above, has a valid claim against Crawford. In case it should develop at any future trial that Crawford is insisting on damages attributable not to Fram's breach of contract, but to Crawford's opposition to Fram's just claim, we take this occasion to note our doubts that such damages are recoverable under Georgia UCC 2-714 and 2-715