**MELODY HOME MANUFACTURING COMPANY, Appellant,**

v.

**Elby E. MORRISON et ux., Appellees.**

**No. 16165.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 8, 1973.

Rehearing Denied Dec. 6, 1973.

See also Tex.Civ.App., 468 S.W.2d 505.

Christopher, Bailey & Taylor, M. Ward Bailey, Fort Worth, for appellant.

Malone, Murphy & Fenley, W. R. Malone, Huntsville, for appellees.

EVANS, Justice.

Melody Home Manufacturing Company appeals from a judgment rendered on jury findings that a mobile home which it had manufactured and delivered to a retailer, and which was subsequently purchased by appellees, was defective at the time of purchase. Judgment was for the sum of $4,000.00, which represented the difference between the reasonable cash market value of the mobile home at the time of purchase and the amount of its market value had it then been fit for the purpose intended. Interest at the rate of 6% was awarded from the date of purchase.

The issues submitted and the jury's findings were as follows:

### SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that the Mobile home in question was not free from defects in workmanship and materials at the time it was delivered to the defendant Capri Mobile Home Sales, Inc., by the Defendant Melody Home Manufacturing Company?

"Answer: 'It was not free from defects.'

### SPECIAL ISSUE NO. 2
(conditioned on Special Issue No. 1)

"Do you find from a preponderance of the evidence that the defects in workmanship and materials, if any you have found in answer to Special Issue No. 1 were in the workmanship and materials furnished or supplied by the defendant Melody Home Manufacturing in the construction of the Mobile home in question?

"Answer: 'We do.'

### SPECIAL ISSUE NO. 3
(conditioned on Special Issue No. 2)

"Do you find from a preponderance of the evidence that the Plaintiffs Elby Morrison and wife, notified the defend-

ant Melody Home Manufacturing Company of any defects in materials and workmanship, if any you have found in answer to the foregoing Special Issue No. 2 within a reasonable time after Plaintiffs discovered or should be discovered any such defects?

"Answer: 'We do.'

### SPECIAL ISSUE NO. 4
(conditioned on Special Issue No. 3)

"Do you find from a preponderance of the evidence that the Defendant Melody Home Manufacturing Company failed to remedy the defects in workmanship and materials if any you have found in answer to Special Issue No. 2?

"Answer: 'We do.'

### SPECIAL ISSUE NO. 5

"Do you find from a preponderance of the evidence that at the time the Morrisons purchased the mobile home in question, it was not fit for the ordinary purpose for which such mobile homes are intended to be used?

"Answer: 'It was not fit.'

### SPECIAL ISSUE NO. 6
(conditioned on Special Issue No. 5)

"Do you find from a preponderance of the evidence that the lack of fitness, if such you have found, was of such a nature as not to be ascertainable by the plaintiffs or persons situated as they were, in the exercise of ordinary care, upon inspection of the mobile home in question at the time it was purchased or within a reasonable time thereafter?

"Answer: 'It was of such a nature.'

### SPECIAL ISSUE NO. 7

"Do you find from a preponderance of the evidence that at the time the Morrisons purchased the mobile home in ques-

tion, it was in substantially the same condition as it was in when it was delivered to Capri Mobile Home Sales, Inc., by the Defendant, Melody Home Manufacturing Company?

"Answer: 'It was.'

### SPECIAL ISSUE NO. 8

"Find from a preponderance of the evidence, the cash market value of the mobile home in question as it existed at the time it was purchased by the Plaintiffs in Pharr, Texas?

"Answer: $2,000.00."

Melody Home complains, in seventeen points of error, that the trial court erred in overruling its motion to strike and in limine and in admitting in evidence testimony relating to noxious and toxic substances in the mobile home's water supply system; in overruling its motions for instructed verdict and for judgment n. o. v., and that the jury's verdict was not supported by sufficient evidence and was against the great weight and preponderance of the evidence and in certain respects indicated improper motivation. Appellant further complains the trial court erred in its award of interest from date of purchase rather than from date of judgment.

■ Prior to trial, Melody Home had entered into a settlement and release agreement with appellees, under which appellees, for consideration paid, released all claims for alleged personal injuries due to the defective mobile home. Melody Home, by its motion to strike and motion in limine, sought to prevent during trial any reference being made to the alleged noxious and contaminating substances in the water pipe system of the mobile home. In response to such motions, appellees' attorney stated to the court that any testimony would be limited solely to the question of the home being unsuitable for the purposes intended and that he would be agreeable to the court's instructing the jury to consider it only for such limited purpose.

The trial court then overruled the motions but stated it would "seriously limit" the testimony. The trial court also stated it would rule on the objections when made. Before any evidence was introduced, Melody Home stated it wished to renew its objections under its motions, which objections were overruled but there was never any request for or the granting of a running objection, to testimony on this point. The witnesses then were permitted, without objection being made, to testify extensively as to the noxious and contaminated condition of the water and its offensive odor and appearance, as well as its effect upon persons who used it. The testimony indicated that when pure water passed through the mobile home pipes, it came out contaminated and of a bad odor, even after efforts were made to remedy the defect, and we hold such evidence was admissible to demonstrate the unsuitability of the home for the purpose intended. Furthermore, no further motion was made by Melody Home to strike this testimony, nor was any request made upon the trial court to give a limiting instruction. Under the circumstances we cannot say the trial court erred and we overrule appellant's points of error 1 through 3.

Melody Home's fourth point of error complains that the trial court failed to instruct a verdict in its favor. Under this general point it argues it was not notified of the alleged defective condition within the time limit of its written warranty or within a reasonable time as required by the Business and Commerce Code. We do not believe this point of error was properly preserved because in its motion for new trial, as well as in its brief, the grounds are not specifically and clearly stated. Wagner v. Foster, 161 Tex. 333, 341 S.W. 2d 887 (1960); Rule 321, Texas Rules of Civil Procedure. However, even considering such point to be properly preserved we find same to be without merit under the facts of this case.

The evidence offered on behalf of Melody Home to show that appellees had notice of the contents of the company's written warranty was inconclusive, indicating only that a warranty is ordinarily contained in the mobile home when delivered to the customer. Appellees testified positively that they were not furnished a copy of the warranty. No issue was submitted or requested by Melody Home on the issue of whether a written warranty had been furnished to appellees; this ground of defense must be deemed waived. Rule 279, T. R.C.P.; McDonald, Texas Civil Practice, Rev.Ed. (1970), Vol. 3, Sec. 12.36.2, p. 433.

The question of whether appellees notified Melody Home within a reasonable time after the defective condition was discovered was also a controverted issue. Appellees moved into the mobile home in June, 1969. Mrs. Morrison, an appellee, testified:

"Q I see. Now, when did you first bring these matters, if you did— I'll ask it this way—did you bring these matters to the attention of Melody Home Manufacturing Company, and if so, how?

"A Yes, I did. I called their factory, and I talked to a Mr. Luther.

"Q When did you call that factory?

"A I called him about the first—about the middle part of the second week in June.

"Q Middle of the second week in June?

"A I don't know exactly what date, but it was right after I got the trailer.

"Q And what did you tell Mr. Luther when you phoned him at the Melody Home Manufacturing Company factory?

"A I asked him if he could send somebody out to repair my trailer house, that it had things wrong with it, that I'd like to have repaired. The water—You couldn't use the water, the floor was giving away, it leak-

ed, my electricity—something was wrong with it, my heating unit—my refrigerator—a whole lot of list. He told me—

"Q What did he tell you?

"A He told me to write him a letter and make him a list of all of the faults that was wrong with my trailer house and send it to him.

"Q Did he tell you whether or not he would do anything?

"A He said—they would fix it for me.

"Q I see. Now, did you write him such a letter?

"A Yes, I did.

"Q And when did you mail it, if you did?

"A I mailed it in June, but I don't remember exactly what day, I sent it to the factory. The next day after I talked to him, I sent it—wrote a letter."

Mrs. Morrison further testified:

"Q Mrs. Morrison, do you recall from your notes what you wrote this man in the letter, and if so tell the jury?

"A He told me to make a list and I did. I told him that the water had oil in it, that the trailer house leaked above the heating unit. The chimney above the hot water heater was not broken—it was there, it was broken. I told him the insulation of the trailer house was coming loose, and that the doors didn't shut, that you have to keep them locked to keep the back door from coming open at night, you would have to make sure, even in the daytime it was locked, and I told him that the floor was sagging, and I know there's—I told him the closet in the front bedroom was broken; I told him the refrigerator would not freeze. I told him the closet in the back bedroom had fell down. I told him that—that every pipe in the trailer house leaked—the kitchen sink where the drain—where it drains, was missing. The drawers in the kitchen, instead of sitting in there straight, they slant sideways. In other words they sat the drawers in there crooked.

"Q What else?

"A Oh—and when they delivered the trailer house, it has a front bathroom in it, and it was,—to have sewer lines that run from the front bath room to the back, they were gone, and then when they left the hot—let's see—when—and then I told them when they moved it—the trailer house—the front wheel had —they didn't tighten the lugs on it and he had wore a hole in the rim —they ruined the rim in the tire, and . . . I told him that the hangers that was supposed to be on the trailer house—called sewer hangers were missing off of it. They were supposed to be installed on it. And let's see. Oh, the lamps in the living room, they are hanging lamps, and they won't stay together, they fall apart. And I told him that the—about the leaks in the trailer house. And I told him there was other things, but I didn't—I didn't list everything.

"Q Okay. Did you have any further communication with Melody Home Manufacturing Company by means of telephone after this first telephone call?

"A Yes, I called him back several times about it, and asked when they were going to send someone to fix my trailer house.

"Q Do you recall in general when these telephone calls were placed by you, and if so when?

"A   They were—I called them in June, and we called them in July, and August.   August, and then—August is when I quit having—I had no more contact with them myself."

Mrs. Morrison also testified that she had a number of telephone calls with a representative of Melody Home and which culminated in a certified letter being sent by her husband to the company on August 26, 1969, which is the first written notification the company admitted having received. The jury found that appellees did notify Melody Home of the defective condition of the mobile home within a reasonable time after the discovery of such defect, and we do not find that the jury's verdict in such respect to be against the overwhelming weight and preponderance of the evidence. Appellant's points of error 4 and 6 are overruled.

As to the measure of damages, Sec. 2.-714(b), Texas Business & Commerce Code, V.T.C.A., provides:

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

■ ˙ The testimony of appellee, Mrs. Morrison, and the parties' stipulation indicate that the base price for the mobile home was around $5300.00, which with finance charges, insurance and interest made a total payment of $7,584.36.   A witness for appellee, Mr. Paul Knox, testified that the reasonable cash value of the mobile home in the year and in the county where it was purchased was approximately $6,000.00 if it had been free of the described defects.   One of appellant's witnesses, A. L. St. John, a mobile home dealer, testified that in his opinion the fair market value of the mobile home at the time and place of purchase and assuming

normal construction and use of good workmanship and materials was a suggested retail price of between $6,012.00 and $5,995.-00.   On the basis of this record, we find the trial judge was justified in concluding, as a matter of law, that the reasonable cash market value of the mobile home at the time and place purchased was $6,000.-00.

■   Melody   Home   argues,   however, that the proper measure of damages was the difference between the amount of $2,000.00, found by the jury to be the actual cash market value of the mobile home in question as it existed when it was purchased, and the sum of $5300.00, the base contract price of the mobile home.   In support of its contention appellant cites, among other cases, Texas Construction Rentals, Inc. v. Harrison, 410 S.W.2d 482 (Tex.Civ.App.—Waco 1966, writ ref'd, n. r. e.) ; Head & Guild Equipment Co., Inc. v. Bond, 470 S.W.2d 909 (Tex.Civ.App.—Beaumont 1971, n. w. h.), and Neuman v. Spector Wrecking & Salvage Corporation, Inc., 490 S.W.2d 875 (Tex.Civ.App.—Beaumont 1973, n. w. h.).   We do not regard these cases as being determinative of this point.

Under Sec. 2.714(b) of the Business & Commerce Code, the trial court properly utilized the actual cash market value of the mobile home instead of the base contract price, even though the base contract price may have been a lesser sum.   See Ash v. Beck, 68 S.W. 53 (Tex.Civ.App., 1902, n. w. h.) ; and 51 Tex.Jur.2d (rev.), part 1, Vol. 51, Sales 354, p. 144, footnote 9, with reference to the Business & Commerce Code, Sec. 2.714(b) wherein it is stated:

"It might be noted that the measure is based on 'value' rather than 'price.' Thus, if the buyer purchases for $100 a machine that would be worth $200 if it answered its warranties, but is worth only $50 as the result of a breach of warranty, the UCC provision might permit the buyer to recover $150, rather than merely $50, which would be the

amount if 'price' were the criterion. See 1 Hawkland, A Transactional Guide to the Uniform Commercial Code 263."

See also Hutchinson v. Texas Aluminum Company, 330 S.W.2d 895, (Tex.Civ.App. —Dallas 1959, writ ref'd, n. r. e.). Appellant's points 5, 11 and 12 are overruled.

Melody Home further argues that the jury's verdict was against the great weight and preponderance of the evidence with respect to the findings that appellees notified appellant of the defects within a reasonable time after discovery; that appellant failed to remedy such defects; that the mobile home was not fit for the purposes intended and that the lack of such fitness was of a nature that was not ascertainable by the exercise of ordinary care upon inspection.

■ We have previously discussed some of the testimony with respect to the giving of notification of the defective condition of the mobile home. It is not essential under Sec. 2.607 of the Business & Commerce Code that the buyer's notification of defective product specifically set forth in detail every objection the buyer has to the fitness of the product; it is only necessary that the seller be informed that there is a claimed breach of the warranty of fitness. We find there was full and sufficient evidence to support the jury's finding that notification of the defective condition was given within a reasonable time and we do not find that such issue was against the great weight and preponderance of the evidence or that there is any indication it was based upon any improper motive. Accordingly, appellant's points of error 6 and 15 are overruled.

■ Nor do we find that the jury's response to Special Issue No. 4, inquiring as to whether appellant failed to remedy the defects, was based upon insufficient evidence or was against the overwhelming weight and preponderance of the evidence. Although appellant's workmen did make some attempt to conduct repairs on the mobile home the testimony of appellees is uncontroverted that there was still complaint of a leaking roof, defective electrical switch, the contamination of the water pipe system, and the sagging floor. Appellant's point of error number 7 is overruled.

■ We are further of the opinion that the jury's finding that the mobile home was not fit for the ordinary purpose for which such mobile homes are intended was supported by sufficient evidence and was not against the great weight and preponderance of the evidence. The fact that the Morrisons continued to live in the mobile home and that it was at some point occupied by their daughter and Mrs. Morrison's father and mother does not establish that it was "fit" or "suitable" for the purposes for which such homes are ordinarily intended. The jury was at liberty to infer from the evidence that the Morrisons were compelled to live with the hardships and unpleasant living conditions caused by the defects in their mobile home, and that they continued to live there, not because they were satisfied with its fitness, but due to financial or other reasons. On this point Mr. Morrison testified:

> "Q Would you tell us why you and your wife continued to live in the trailer rather than moving?
>
> "A Yes, just before—well—just before we bought the trailer, we had lost a daughter, and due to financial responsibilities, we were just unable to move."

■ Appellees' claim for damages for breach of warranty was not waived by its acceptance and use of the mobile home, nor by the fact they did not undertake to correct the defective conditions. Sec. 2.714 Uniform, Business & Commerce Code; Hahl v. Deutsch, 42 Tex.Civ.App. 1, 94 S. W. 443 (1906, n. w. h.); Aultman & Taylor Co. v. Hefner, 67 Tex. 54, 2 S.W. 861 (1886). Appellant's point of error number 8 is overruled.

We further hold that the jury's findings that the defects in the fitness of the mobile home were of such nature as to be unascertainable upon ordinary inspection is supported by sufficient·evidence and not against the great weight and preponderance of the evidence. It was not until after the water and electricity had been connected on the mobile home site that the contaminated water pipe system could be determined; the leaky roof was not ascertainable until the home was subjected to rain and the water came down through the inside of the wall and ran underneath the floor; and the structural condition of the flooring only became apparent after the mobile home had been placed on the site. Appellant's points of error numbers 9 and 16 are overruled.

We are further of the opinion that the jury's finding as to the cash market value of the mobile home in question as it existed at the time it was purchased is supported by sufficient evidence and is not against the great weight and preponderance of the evidence. There was detailed testimony as to the extensive nature of the defects which rendered the trailer unfit for the purpose intended and appellees' valuation witness testified that on the basis of such defective condition his opinion of the reasonable cash market value at the time and place of purchase was $2,000.00. Appellant argues that a check list made at the time the mobile home was accepted by the dealer showed no defects or deficiencies; that the testimony reflected a number of checks being made of the appellant's mobile homes during the course of manufacturing; that no defects or deficiencies were indicated at the time Mrs. Morrison went to the dealer's store to pick out the mobile home; and that Knox's testimony indicates that most of the defects could be repaired for $200 or $300. While this testimony could be considered as bearing upon the actual cash market value of the mobile home at time of purchase, it was not conclusive and the jury was at liberty to conclude from the evidence that the market value was as stated in the opinion of Mr. Knox. We overrule appellant's points of error numbers 10, 13 and 14.

Appellant's last point is that the trial court erred in awarding interest at the legal rate from May 2, 1969, the date of purchase. Under the circumstances of this case we find the trial court was justified in awarding interest by way of damages on the difference between the value of the mobile home in its existing condition at the time of purchase and its reasonable cash market value if it had been free from defects. Routh v. Caron, 64 Tex. 289 (Tex.Sup.1885); Fulwiler Electric Co. v. Jinks McGee & Company, 211 S.W.2d 480 (Tex.Civ.App.—El Paso 1919, no writ hist.); Section 2.715 Business & Commerce Code; See also 4 A.L.R.2d 1388. Appellant's point of error No. 17 is overruled.

The judgment of the trial court is affirmed.