CITY OF MARSHALL, TEXAS and
Entex, Inc., Plaintiffs-Appellees,

v.

BRYANT AIR CONDITIONING CO., a
Division of Carrier Corporation,
Defendant-Appellant.

WILEY COLLEGE and Entex, Inc.,
Plaintiffs-Appellees,

v.

BRYANT AIR CONDITIONING CO., a
Division of Carrier Corporation,
Defendants-Appellants.

No. 79–3531.

United States Court of Appeals,
Fifth Circuit.
Unit A

July 16, 1981.

Robin P. Hartmann, William R. Allensworth, Nina Cortell, Dallas, Tex., for Bryant Air Cond. Co.

Abney & Baldwin, Gaines Baldwin, Marshall, Tex., for City of Marshall, Texas and Wiley College.

Larry Starr, John Ward, Longview, Tex., for Entex, Inc.

Before GOLDBERG, AINSWORTH and RUBIN, Circuit Judges.

GOLDBERG, Circuit Judge:

One short year after the now legendary heat wave of 1980 burned its way through the South, we are forced to consider the paradoxically chilling thought of a Texas summer without air conditioning. Plaintiff-appellees claim that they were forced to simmer through several summers due to defendant-appellant's deceptive trade practices and breach of warranty with regard to

the sale and maintenance of air conditioning equipment. While we can certainly sympathize with appellees' frustration and perspiration, we are required by Texas law to reverse the judgment in their favor and remand the case to the trial court.

## I. "Summer In The City"

In 1973 defendant-appellant Carrier Corporation ("Carrier"), through its Bryant Air Conditioning Company division, manufactured six air conditioner units which were sold for use in the City of Marshall, Texas ("Marshall") public library. In 1974 Carrier, again through its Bryant division, manufactured ten air conditioner units which were sold for use in the Wiley College men's dormitory. Each of these units was sold by Carrier pursuant to an express warranty which provided that (1) Carrier warranted the components and parts of the air conditioning equipment to be free from defects in material or workmanship for a period of one year after installation, (2) Carrier agreed to "repair or replace, at its option" certain components or parts which were found to be defective during the one year period, and (3) for an additional four year period, Carrier agreed to "repair or replace, at its option, certain parts or components in the 'Refrigeration System' found to be defective." Record at 49.

According to plaintiff-appellees, the equipment never worked properly and required considerable maintenance and repair by Entex Corporation ("Entex"), a gas utility company. Plaintiff-appellees claim that the problems were due to the unavailability of replacement parts and hence the failure of the Carrier warranty. In 1977 the sweltering situation allegedly reached near-crisis proportions, and in October of that year Carrier sent the late Ralph Kemp ("Kemp") to look into the matter. During his visits to Marshall and Wiley College, Kemp apparently stated that the air conditioning equipment could be repaired and adjusted to give satisfactory performance, that Carrier would supply necessary replacement parts, and that Carrier would provide factory trained personnel to work on the units.

However, shortly after Kemp examined the allegedly defective air conditioning equipment, Wiley College and Marshall entered into an agreement with Entex which provided that Entex would replace the Carrier air conditioners with new equipment at its own cost in return for Marshall's and Wiley College's legal rights against Carrier. Pursuant to this agreement, new air conditioning equipment was installed at the Marshall library and Wiley College dormitory.

Both Marshall and Wiley College brought state court suits against Carrier seeking damages for breach of warranty and violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("Deceptive Trade Practices Act"), Tex. Bus. & Com. Code Ann. tit. 2, §§ 17.41–17.62. (Vernon Supp. 1980). Carrier removed the actions to federal court based on diversity of citizenship, and the federal district court granted Entex's motions to intervene as assignee of Marshall's and Wiley College's claims. The actions were then consolidated and tried before a jury. After a four day trial, the jury returned a verdict in favor of plaintiffs on both the breach of warranty and deceptive trade practices issues. Because the two claims represented alternative grounds of recovery, the trial court entered judgment pursuant only to the greater of the two verdict amounts, awarding treble damages and attorney's fees under the Texas Deceptive Trade Practices Act. Carrier appeals from the trial court's judgment.

## II. "We Can Work It Out": The Deceptive Trade Practices Act Claim

■ It is undisputed that the basis of plaintiff-appellees' Deceptive Trade Practices Act claim in this case centers around statements made by Carrier's representative Ralph Kemp during his visits to Wiley College and the Marshall public library in the autumn of 1977. As noted above, after examining the allegedly defective air conditioning equipment, the late Mr. Kemp apparently stated that the units could be repaired and adjusted to give satisfactory performance, that Carrier would provide

factory trained personnel to work on the units, and that Carrier would supply necessary replacement parts. Plaintiff-appellees argued at trial that had these representations been fulfilled, there would have been no need to replace the allegedly defective air conditioning equipment. Plaintiff-appellees then reasoned that they were entitled to the cost of replacing the Carrier air conditioners with new units. The jury apparently agreed, and the trial court entered judgment trebling the $77,000 replacement cost verdict for plaintiffs.

On appeal, Carrier raises a number of issues which it claims preclude a Deceptive Trade Practices Act judgment in the case at bar. However, we need go no further than a consideration of one of the basic elements of a Texas Deceptive Trade Practices Act claim: the requirement that a plaintiff recover only for damages actually caused by the allegedly deceptive trade practice. Because there is no proof in the record of this case of any damages caused by any allegedly deceptive trade practice, the trial court should have directed a verdict in favor of defendant on the Deceptive Trade Practices Act claim.[1] We therefore must reverse the trial court's judgment and order dismissal of the Deceptive Trade Practices Act claim in this case.

■ It is clear that under the Texas Deceptive Trade Practices Act, the allegedly deceptive trade practices must cause the plaintiff to be actually damaged before he can recover. See Tex. Bus. & Com. Code Ann. tit. 2, § 17.50 (Vernon Supp. 1980); Yates v. Medrano, 580 S.W.2d 49 (Tex.Civ. App. 1979); Reiger v. DeWylf, 566 S.W.2d 47 (Tex.Civ.App. 1978—writ ref. n.r.e.); Woo v. Great Southwestern Acceptance Corp., 565 S.W.2d 290 (Tex.Civ.App. 1978—writ ref. n.r.e.); Woods v. Littleton, 554 S.W.2d 662 (Tex.1977). In the case at bar, plaintiff-appellees' damages, if any, were caused solely by the failure of the air conditioning equipment and alleged breach of warranty. There is no evidence that Kemp's allegedly deceptive trade practices caused any actual damages whatsoever. While it is true that if Kemp's alleged representations were fulfilled by Carrier, plaintiff-appellees would not have incurred the replacement cost of new air conditioning equipment, the statements themselves in no way caused this cost or additional costs. The allegedly defective equipment had been purchased years before Kemp's statements were made, and so this is not a case in which an allegedly deceptive trade practice caused a plaintiff to buy defective equipment. Moreover, shortly after Kemp's visit, plaintiff-appellees purchased new air conditioning equipment, and so this is not a case in which an allegedly deceptive trade practice caused a plaintiff to enter into a detrimental transaction, or to refrain from entering into a beneficial transaction. Rather, it is a case in which the allegedly deceptive trade practice did not cause plaintiffs to alter their plans or behavior, and did not cause them any harm whatsoever. The only damage in the case at bar—if any—was the result of an equipment failure beginning some time before the allegedly deceptive statements were made. Plaintiff-appellees may have suffered through several summers because of the air conditioning equipment failure and alleged breach of warranty, but they did not suffer any more due to Kemp's statements made in the autumn of 1977.[2]

---

1. "A directed verdict should be granted if, considering all the evidence in the light most favorable to the party against whom the verdict is directed, reasonable men could not reach a contrary verdict." *Murphy v. Georgia-Pacific Corp.*, 628 F.2d 862, 867 (5th Cir. 1980); *see Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc). In the case at bar, the defendant moved for a directed verdict but the trial court refused to grant the motion. *See* Record at 625–33.

2. Shortly after Kemp's autumn visit to Wiley College and the Marshall public library, and before the start of the next sweltering summer, Entex—the company handling virtually all air conditioning matters for Wiley College and the Marshall public library—replaced the allegedly defective equipment with new air conditioners. However, the decision to replace the Carrier air conditioners with new equipment appears to have been made *before* Kemp's visit. *See* Record at 581–83; Defendant's Exhibit 29. Hence, Kemp's visit was viewed by plaintiff-appellees

Because "reasonable men could not reach a contrary verdict," *Murphy, supra,* 628 F.2d at 867; *see* note 1 *supra,* the trial court should have directed a verdict in defendant's favor. We therefore reverse the judgment of the trial court and order dismissal of plaintiff-appellees' Deceptive Trade Practices Act claim.[3]

### III. "Promises, Promises": The Breach of Warranty Issues

As an alternative ground of recovery, the jury awarded plaintiffs breach of warranty damages in the amount of $49,000. Appellants argue that this verdict cannot be sustained due to a number of errors below. We agree with appellants that the jury was not properly instructed on the issue of reasonable notice under Texas warranty law, and we therefore reverse the jury verdict and remand for a new trial on this issue.[4]

 Texas law "requires notification by the buyer to the seller that a breach of warranty has occurred," so that the seller has an opportunity to cure the breach. *See Import Motors, Inc. v. Matthews,* 557 S.W.2d 807, 809 (Tex.Civ.App. 1977—writ ref. n.r.e.); *Vintage Homes, Inc. v. Coldiron,* 585 S.W.2d 886 (Tex.Civ.App. 1979); *Southwest Lincoln-Mercury, Inc. v. Ross,* 580 S.W.2d 2 (Tex.Civ.App. 1979); *Melody Home Manufacturing Co. v. Morrison,* 502 S.W.2d 196, 203 (Tex.Civ.App. 1973—writ ref. n.r.e.); Tex. Bus. & Com. Code Ann. tit. 1, § 2.607 (Vernon 1968). In the case at bar—despite timely objection by defendant-appellant—the jury was not instructed that such notice was required.[5] Rather, the jury was told that the essential elements of a breach of warranty claim in the case at the bar were simply that the air conditioning equipment was defective in material and workmanship, and that defendant failed to repair or replace defective components or parts in accordance with the warranty. *See* Record at 730. Because the issue of reasonable notice was improperly omitted from the trial court's jury charge, we must remand for a new trial on the breach of warranty issue. *Cf. United States ex rel. Fram Corp. v. Crawford,* 443 F.2d 611 (5th Cir. 1971) (instruction omitting notice deficient under Georgia law).

Plaintiff-appellees note that the jury was asked—via special interrogatory—whether Carrier was given a reasonable opportunity to cure the equipment defects or malfunctions. Since the jury answered that Carrier was given such an opportunity, plaintiff-appellees reason that the notice issue has been resolved in their favor. *See* Record at 18. While this argument looks persuasive at first glance, upon closer scrutiny it is seen to lack merit. The special interrogatory

---

as nothing more than as an opportunity to bargain for a cash settlement with Carrier, *see id.,* and the alleged representations made by Kemp could not have caused plaintiff-appellees to do anything differently or to suffer any harm.

3. Because we reverse the Deceptive Trade Practices Act judgment on this ground, we do not reach the remaining Deceptive Trade Practices Act issues raised by appellant.

4. We reject appellant's contentions that, as a matter of law, Carrier fulfilled its warranty, and that, again as a matter of law, plaintiff-appellees failed to give Carrier adequate notice of the breach. There was ample evidence both of the breach and of notice to Carrier to submit these issues to the jury. *See, e. g.,* Record at 31–43, 54–60, 126–30, 147–60, 230–35, 307–12, 434–37, 452. Likewise, we reject appellees' contention that adequate notice was proven as a matter of law. *See, e. g., id.* at 610–11; Plaintiffs' Exhibit 3. Considering the record as a whole, the issue of reasonable notice was

clearly a jury question and the court's erroneous instruction on this issue therefore requires reversal.

Because we reverse and remand with regard to the breach of warranty claim based on the trial court's erroneous instruction regarding notice, we do not reach appellant's other breach of warranty claims which—if correct—would require the same result.

5. Contrary to plaintiff-appellees' contention, the issue "whether Carrier was given a reasonable opportunity to cure the alleged defects or malfunctions" was presented in the pre-trial order by defendant-appellant, and hence the issue of notice was adequately raised. Record at 27–28. Moreover, defendant-appellant raised a timely objection to the court's jury charge on breach of warranty, arguing that the trial court erroneously failed to instruct the jury that notice is a necessary element of a breach of warranty claim. *Id.* at 750–51.

made it clear that the jury was to consider the notice issue only if *the Deceptive Trade Practices Act claim* was resolved in favor of plaintiffs. Hence, the jury was asked to resolve the notice issue only with regard to claims arising from statements made by Carrier representative Kemp in the autumn of 1977. Since the allegedly defective equipment was installed in 1973 and 1974, since plaintiff-appellees complained that the equipment never worked properly, and since the primary warranty was for only one year, adequate notice with regard to claims arising from allegedly deceptive trade practices in 1977 is irrelevant with regard to claims arising from an alleged breach of warranty.[6] Moreover, as noted above, the court's instruction on the essential elements of a breach of warranty claim clearly omitted the notice issue. The jury was not asked to consider whether Carrier was given a reasonable opportunity to cure equipment defects with regard to the alleged breach of warranty, and the instruction below was therefore erroneous.[7]

IV. Conclusion: "The Second Time Around"...

Because there is no evidence that plaintiff-appellees were actually damaged by the allegedly deceptive trade practices in the case at bar, we reverse the judgment of the trial court and order that the Deceptive Trade Practices Act claim be dismissed. Because the jury was improperly instructed on breach of warranty, we remand for a new trial on this issue.

REVERSED and REMANDED.

---

6. For example, the jury's answer to this special interrogatory may simply mean that the jury found that plaintiffs gave Carrier reasonable notice of Carrier's failure to fulfill the alleged representations made by Kemp. This notice is a far cry from the reasonable notice required with regard to an alleged breach of warranty for equipment installed several years earlier.

7. Appellant also suggests that the plaintiffs' claim is time barred by the applicable statute of limitations. Because the record below is not sufficiently developed concerning when plaintiffs' cause of action accrued for statute of limitations purposes, we do not reach this issue. Nothing in this opinion should be read as in any way precluding defendant-appellant from raising the statute of limitations issue on remand.